PEOPLE v HANEY

Docket No. 77-1770. Submitted May 9, 1978, at Detroit.—Decided October 3, 1978.

Rebecca L. Haney was convicted of buying, receiving or aiding in the concealment of stolen property worth over $100, knowing the same to have been stolen, in Monroe Circuit Court, James J. Kelley, Jr., J. Defendant appeals. *Held:*

The trial court erred in excluding evidence of the defendant's conversations with the alleged seller of the stolen automobile on the basis of hearsay since the statements were offered to show the defendant's lack of knowledge of whether the car was stolen and were, therefore, used to show the effect of such utterances on the hearer, not to prove its truth. The error was harmless and didn't violate the defendant's right to bring a defense since there was ample evidence from which the jury could infer the requisite guilty knowledge and the evidence would have been cumulative of the evidence placed before the jury. Defendant's failure to object to the jury instructions precludes appellate review except where a miscarriage of justice would otherwise result.

Affirmed.

T. M. BURNS, J., dissented and would hold that the trial court's error in excluding the hearsay evidence of the conversations with the alleged seller deprived the defendant of an opportunity to fully present a defense, deprived the defendant of a fair trial, and, therefore, was reversible error.

OPINION OF THE COURT

1. EVIDENCE—HEARSAY—WORDS AND PHRASES.

Hearsay is testimony of an out-of-court statement used to prove the truth of the matters asserted therein; the crucial question is the purpose for which the statements are offered.

REFERENCES FOR POINTS IN HEADNOTES

[1] 29 Am Jur 2d, Evidence §§ 493, 497.
[2, 5] 5 Am Jur 2d, Appeal and Error §§ 802, 803.
[3] 5 Am Jur 2d, Appeal and Error §§ 623, 891.
[4] 75 Am Jur 2d, Trial § 843-845.

2. APPEAL AND ERROR—CRIMINAL LAW—EVIDENCE—HEARSAY—
      KNOWLEDGE—EFFECT ON HEARER—TRUTH—HARMLESS ERROR—
      GUILTY KNOWLEDGE—CUMULATIVE EVIDENCE.

   A trial court erred, in a trial for buying, receiving or aiding in
   the concealment of stolen property worth over $100, knowing
   the same to have been stolen, in excluding evidence of the
   defendant's conversations with the alleged seller of the stolen
   automobile on the basis of hearsay where the statements were
   offered to show the defendant's lack of knowledge of whether
   the car was stolen and were, therefore, used to show the effect
   of such utterances on the hearer, not to prove their truth;
   however, such an error was harmless and did not violate the
   defendant's right to bring a defense where there was ample
   evidence from which the jury could infer the requisite guilty
   knowledge and where the evidence sought to be introduced by
   the defendant would have been cumulative of evidence placed
   before the jury.

3. APPEAL AND ERROR—PRESERVING ERROR—JURY INSTRUCTIONS—
      MISCARRIAGE OF JUSTICE.

   A defendant's failure to object to the jury instructions at trial
   precludes appellate review of such instructions, except where a
   miscarriage of justice would otherwise result.

4. CRIMINAL LAW—TRIAL—JURY INSTRUCTIONS—COURT'S DUTIES—CIR-
      CUMSTANTIAL EVIDENCE.

   A trial judge has no duty to *sua sponte* instruct the jury that
   when a case is based on circumstantial evidence the state must
   refute every theory consistent with innocence; such an instruc-
   tion does not accurately reflect the state of the law in Michi-
   gan.

DISSENT BY T. M. BURNS, J.

5. APPEAL AND ERROR—EVIDENCE—HEARSAY—CONTESTED ISSUES—OP-
      PORTUNITIES FOR DEFENSE—FAIR TRIAL—TRUTH.

   *A trial court's error, in a trial for buying, receiving or aiding in
   the concealment of stolen property worth over $100, knowing
   the same to have been stolen, in excluding on hearsay grounds
   testimony which bears directly on the only contested issue,
   whether the defendant knew the car was stolen when she
   bought or received it, deprived the defendant of an opportunity
   to fully present a defense and, therefore, deprived the defend-
   ant of a fair trial, where the purpose of such testimony was to
   show that the defendant did not know the car was stolen and*

*was not to prove the truth of the matters asserted in the conversations.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Michael W. LaBeau,* Prosecuting Attorney, and *William P. Godfroy,* Assistant Prosecuting Attorney, for the people.

*Barbara R. Levine,* Assistant State Appellate Defender, for defendant on appeal.

Before: Cynar, P.J., and T. M. Burns and D. C. Riley, JJ.

Per Curiam. Defendant appeals as of right from her February 1, 1977, conviction by a Monroe County jury of buying, receiving or aiding in the concealment of stolen property worth over $100, knowing the same to have been stolen. MCL 750.535; MSA 28.803. On March 10, 1977, she was sentenced to a term of two to five years imprisonment.

Defendant was a passenger in a 1971 Lincoln driven by Arthur Thomas when it was stopped for speeding on June 11, 1976. After defendant produced a registration slip bearing her name, the officer ran a check on the car's license plates. This revealed that the plates were registered to Arthur Thomas for a 1968 Ford Mustang. Other discrepancies in the registration led the officer to run a vehicle identification number check on the car. These discrepancies included the absence of a validation stamp, extraneous letters in the identification number and an imprecise description of the make of the car. Furthermore, it was pointed out at trial that the fees listed on the registration were too high and that it was incorrectly marked "tax exempt". The vehicle identification number

check indicated that the car was reported stolen on June 1, 1976. On the basis of this evidence, defendant was arrested.

At trial the owner of the car, Joseph Brooks, testified that the car was stolen from the parking lot of an Ann Arbor shopping center on June 1, 1976. He also testified that when the car was returned to him he noted that his key no longer fit the ignition.

The prosecution also called Joseph Giljum, a used car sales manager, to testify. He appraised the Lincoln at $3400 wholesale and $4200 retail. He also stated that there was a lot of flexibility in car prices and that $1500 was not much of a variance for a car such as that involved herein. In response to a prosecution question as to whether $1500 was a fair market price for the car, he replied that it was "more than fair, it's very cheap".

Defendant took the stand in her own defense and gave the same explanation that was given to the arresting officers. She testified that she and Mr. Thomas saw the automobile in a Highland Park parking lot with a "For Sale" sign on it. They stopped and talked to the purported owner, Rufus Williams. On June 4, 1976, she paid $1500 for the car. She testified that the transfer took place in the Secretary of State's Office in Highland Park. There, she claimed to have paid Williams the money, signed some papers and received the registration and a handwritten receipt. She also testified that she was told by Williams that the title would come in the mail. She added that after the purchase Williams removed the license plates from the car; so she took a plate from Thomas's car and placed it on the Lincoln. The whereabouts of Rufus Williams is unknown, as defendant never obtained his address or phone number.

Defendant claims that the trial court erred in sustaining prosecution objections to the introduction of evidence of defendant's conversations with the alleged seller of the car. These conversations, which apparently involved price negotiations and matters relating to the transfer of the automobile, were excluded on the basis of hearsay. Each of these objections followed a statement by defendant as to what Williams had allegedly told her.[1]

---

[1] She tried to testify as follows:

"Q *[Mr. Nordstrom, defense attorney]* And did he indicate a price to you?

"A Yes.

"Q And what was the price that he first indicated to you?

"A Well, the very first price—he said he was trying to get twenty-five * * * .

"MR. VITALE *[Chief Assistant Prosecuting Attorney]:* Objection your Honor. I believe that would probably be hearsay as to what he indicated to her.

"THE COURT: Objection sustained.

"Q (By Mr. Nordstrom) Miss Haney, did this individual who has come to be known as Rufus Williams, indicate a price to you?

"MR. VITALE: Objection again.

"MR. NORSTROM: Your Honor, I'm not asking what the price was. I'm asking if he indicated a price to her.

"A (By the witness) Yes, he did.

"THE COURT: Don't answer where there's an objection. It's still hearsay. Objection sustained.

* * *

"Q And then how did you get into contact with him?

"A Well, at first—he called me at my home and I gave him my number because he said that he didn't have a phone, so I gave him my number to call me the next day at my home. He called at the house and I told him I had some money but it wasn't what he had asked for.

"MR. VITALE: I'm going to object to that hearsay, Judge.

"THE COURT: Miss Haney, don't tell us what somebody else told you.

"Objection sustained, at this stage at least.

* * *

"Q Now when you got to the Secretary of State's Office, what happened then?

"A We went in, he and I went inside, and there was a line, and I was standing in the line with him until he told me that I could go sit down.

"MR. VITALE: Objection.

Hearsay is testimony of an out-of-court statement used to prove the truth of the matters asserted therein. *People v Hallaway,* 389 Mich 265, 275; 205 NW2d 451 (1973) (opinion of T. E. BRENNAN, J.). See also MRE 801(c). On their face, statements of what another person said at some prior point in time would appear to be hearsay, absent any applicable exception to the hearsay rule. The crucial question, of course, is the *purpose* for which the statements are offered. Defendant contends that the statements here were offered to show her lack of knowledge of whether the car was stolen. She contends that evidence of price negotiations would show the reason for the car's low price, that evidence of her conversations with Williams would explain why she was ignorant of the discrepancies in the registration and that evidence of her conversations with Williams after the transaction would shed light on the matter of the license plates.

We agree with defendant's contention that evidence of statements made by others may have some bearing upon the question of knowledge or lack thereof. Obviously, one's knowledge is affected

---

"THE COURT" Miss Haney, I told you not to tell us what was told to you by this Mr. Williams. Keep that out of your testimony. It's hearsay.

\* \* \*

"Q And after he gave you the receipt, what did you do then?

"A After I gave him—after he gave me the receipt for the money we both left the Secretary of State and went outside.

"Q Then what happened?

"A At that point we both got into the car, and he asked me would I drop him off at Dexter—on Dexter, and I told him yes, so I dropped— when we got to Dexter he got out of the car and said that he wanted to \* \* \* .

"MR. VITALE: I'll object, your Honor. Hearsay.

"Q (By Mr. Nordstrom) Miss Haney again don't tell us what Mr. Williams said to you."

by the statements of others. In such situations the utterance is used to show the effect on the hearer, not to prove its truth. McCormick, Evidence (2d ed), § 249, pp 589–590, *People v Cameron,* 52 Mich App 463, 466; 217 NW2d 401 (1974). It was thus error for the trial judge to exclude these statements.

Defendant further contends that this error violated her right to present a defense, citing *Chambers v Mississippi,* 410 US 284; 93 S Ct 1038; 35 L Ed 2d 297 (1973). That case involved a confession by another which was excluded on the basis of hearsay. There, the excluded evidence, if believed, would have provided a complete defense to the crime. Such is not the case here. Even accepting as true defendant's allegations as to the substance of the excluded testimony, there was ample evidence from which the jury could infer the requisite guilty knowledge.

Moreover, this Court fails to see what could have been added by defendant which would not have been cumulative of the evidence placed before the jury. Defendant explained that her companion's license plates had been put on the car because Williams had removed his. Her ignorance of the false validation or the registration was explained by her failing to accompany Williams to the counter in the crowded Secretary of State's office. Any inference to be drawn from the prosecution's expert witness's characterization of the purchase price as "cheap" were substantially rebutted by his own testimony, indicating that a $1500 variance from $3400 wholesale price was not that much. Therefore, on the basis of the above, we hold that the exclusion of the statements constituted harmless error and that defendant's right to bring a defense was not violated.

Defendant also contends that certain portions of the jury instructions constituted reversible error. However, no objections were made to any of the instructions. Thus, this issue was not preserved for review. GCR 1963, 516.2; *People v Sherman Hall,* 77 Mich App 456, 462; 258 NW2d 517 (1977).

There is an exception to the "no objection, no review" rule when a miscarriage of justice would otherwise result. *Hall, supra,* 462. However such is not the case here. Contrary to defendant's contention, the trial judge has no duty to *sua sponte* instruct the jury that when a case is based on circumstantial evidence, the state must refute every theory consistent with innocence. *People v Blackwell,* 61 Mich App 236, 243; 232 NW2d 368 (1975). Furthermore, we agree that such an instruction does not accurately reflect the state of the law. See *People v Edgar,* 75 Mich App 467, 472-474; 255 NW2d 648 (1977). Nor do we find authority in support of defendant's contention that the instructions for this offense must reflect a theory of either "buying", "receiving" or "aiding in concealment". Assuming *arguendo* that such a choice must be made, the instruction on "aiding in concealment" was proper, since the information listed the date of the arrest, not the date of the alleged purchase, as the date of the offense. Finally, the trial judge's review of the evidence was not so biased as to warrant reversal. Although it is unwise to summarize some facts as "alleged", while noting others in more absolute terms, in this instance any error was cured by other instructions indicating that the jury should disregard anything said by the trial judge that could be construed as an opinion.

Affirmed.

T. M. BURNS, J. *(dissenting).* The question in this

case is the extent of the error in excluding, on hearsay grounds, testimony which bears directly on the only contested issue below—whether defendant knew the car was stolen when she bought or received it. We all agree that error occurred. My review of the record convinces me the error deprived defendant of the opportunity to fully present her defense, and thus deprived her of a fair trial.

The two lines of inquiry in question involved conversations with the seller during price negotiations and during the transfer of funds and receipt of registration at the Secretary of State's office. See footnote 1 of the majority opinion. In each case, the trial court limited the testimony on the basis of hearsay. Since the purpose of this testimony was not to prove the truth of the matter asserted in the conversations, but rather, to show that defendant did not know the car was stolen, the trial court erred in excluding it. *People v Hallaway,* 389 Mich 265, 275; 205 NW2d 451 (1973) (opinion of T. E. Brennan, J.), *People v Cameron,* 52 Mich App 463; 217 NW2d 401 (1974). In my view, the error was sufficiently prejudicial to warrant reversal.

The prosecution argued that defendant's explanation of how she acquired this car was unreasonable and that the jury should infer that defendant knew the car was stolen from the facts and circumstances. However, only a part of the facts and circumstances had been presented, those supporting the prosecutor's theory. All the defense was allowed to show was defendant's claim that she had paid $1,500 for a Continental Mark III.

The heart of the defense was showing that defendant, from her inexperience, believed the amount paid was reasonable and that nothing in

the documents received from the Secretary of State's office should have led her to the opposite conclusion. The improperly excluded evidence would bear directly on these points. By excluding the testimony, the court deprived defendant of a large part of her defense. See, *Chambers v Mississippi,* 410 US 284; 93 S Ct 1038; 35 L Ed 2d 297 (1973).

I would reverse.