PEOPLE v GOLDSMITH

Docket No. 78-3014. Submitted October 19, 1979, at Detroit.—Decided December 5, 1979. Leave to appeal applied for.

Almer K. Goldsmith was convicted of assault with intent to commit murder and possession of a firearm during the commission of a felony, Wayne Circuit Court, Victor J. Baum, J. Defendant appeals. Before the start of jury deliberations the court gave an instruction that a jury unable to reach a verdict has failed to accomplish its purpose and gives ammunition to those who oppose the jury system and to bear this in mind in their deliberations. Defendant claims that the trial court's instruction improperly coerced the jury into bringing in a verdict. *Held:*

The court went beyond the bounds of propriety. The instruction was intimidating and coercive because it could cause a juror to abandon his conscientious dissent and defer to the majority solely for the sake of reaching agreement. Such results have no place in a fair criminal justice system.

Reversed and remanded.

DANHOF, C.J., dissented. He would hold that because the defendant failed to object and there was no miscarriage of justice on the facts, the "no objection, no review" rule should be applied. Furthermore, he believes that the court's instructions, read as a whole, would not cause a juror to abandon his conscientious dissent and defer to the majority for the sake of reaching agreement. He would affirm.

OPINION OF THE COURT

1. CRIMINAL LAW — INSTRUCTIONS TO JURY — PREDELIBERATION INSTRUCTIONS — INTIMIDATING AND COERCIVE INSTRUCTIONS — JURY AGREEMENT — FAIR VERDICT.

A charge to the jury, before they deliberate, which instructs them that a jury unable to reach a verdict has failed to accomplish

REFERENCES FOR POINTS IN HEADNOTES
[1] 76 Am Jur 2d, Trial § 1055.
[2] 5 Am Jur 2d, Appeal and Error § 553.
  75 Am Jur 2d, Trial §§ 906, 907.

its purpose, and each time an indecisive jury fails ammunition is given to those who oppose the jury system which requires a unanimous vote of all twelve jurors for conviction or acquittal and to bear this in mind in their deliberations, is intimidating and coercive because it could cause a juror to abandon his conscientious dissent and defer to the majority solely for the sake of reaching agreement; such results have no place in a fair criminal justice system.

DISSENT BY DANHOF, C.J.

2. APPEAL AND ERROR — CRIMINAL LAW — INSTRUCTIONS TO JURY — FAILURE TO OBJECT — MISCARRIAGE OF JUSTICE — STATUTES — COURT RULES.

A defendant's failure to object to jury instructions, where an opportunity to make objection was granted at trial, precludes appellate review of such instructions under the "no objection, no review" rule unless a miscarriage of justice would otherwise result (MCL 768.29; MSA 28.1052, GCR 1963, 516.2).

*Frank J. Kelley*, Attorney General, *Robert A. Derengoski*, Solicitor General, *William L. Cahalan*, Prosecuting Attorney, *Edward Reilly Wilson*, Principal Attorney, Appeals, and *Timothy L. Cronin*, Assistant Prosecuting Attorney, for the people.

*Kim Robert Fawcett*, Assistant State Appellate Defender, for defendant on appeal.

Before: DANHOF, C.J., and N. J. KAUFMAN and D. C. RILEY, JJ.

N. J. KAUFMAN, J. Defendant was convicted of assault with intent to commit murder, MCL 750.83; MSA 28.278, and possession of a firearm in the commission of a felony, MCL 750.227(b); MSA 28.424(2), by a Wayne County Circuit Court jury. He was sentenced to imprisonment for 5 to 15 years on the assault conviction and to a two-year consecutive sentence on the felony-firearm conviction. Defendant appeals as of right under GCR 1963, 806.1.

Defendant raises a myriad of allegations in this appeal, only one of which warrants reversal. Defendant argues the trial court's instruction improperly coerced the jury into bringing in a verdict. We agree. In its instruction upon the jury's duties, the court went beyond the bounds of propriety. At first, the instructions presented no problem. The court apprised the jurors that they were to enter the deliberations with an open mind and a willingness to give serious consideration to each other's opinions. They were to deliberate with a view to reaching unanimous agreement, if it could be done without sacrificing individual judgment.

At this point the court's charge went from an instructive, informative one to one that was intimidating and coercive. The court stated:

"Let me remind you that when a jury is unable to reach a verdict, the jury has not accomplished its purpose. A jury unable to agree, therefore, is a jury which has failed in its purpose. Each time such an indecisive jury fails, ammunition is given to those who oppose the jury system as we know it, a system that requires a unanimous vote of all twelve jurors for either conviction or acquittal. As you deliberate, please bear this in mind."

The leading case in Michigan which thoroughly considered the issue of jury coercion in the supplemental charge context is *People v Sullivan,* 392 Mich 324; 220 NW2d 441 (1974). In that case, the Supreme Court expressed a disfavor with the use of *Allen-* type charges[1] due to the danger of possible coercive effects, and recommended ABA jury

[1] The popular name for this instruction came from the United States Supreme Court's approval of the charge in *Allen v United States,* 164 US 492; 17 S Ct 154; 41 L Ed 528 (1896).

standard 5.4[2] for prospective use in deadlocked jury situations.

It is important to note that *Sullivan, supra,* dealt with a deadlocked jury situation whereas the instant instruction was given prior to the jury's initial deliberations. In deadlocked jury situations, instructions such as that recommended in ABA 5.4 serve several purposes. They encourage the jury to work harder in their deliberations, but hopefully do not coerce a verdict. They additionally serve as a judicial economy measure by serving to avoid the time and expense of convening another trial. The potential coercive effect of this type of charge is then tolerated to a certain extent due to the positive purposes it serves. See *Sullivan, supra* at 333-334.

These purposes need not be served in a predeliberation setting as in the case at bar. The jury

[2] ABA Project on Minimum Standards for Criminal Justice, Trial by Jury, Standard 5.4:

" 'Length of deliberations; deadlocked jury.

" '(a) Before the jury retires for deliberation, the court may give an instruction which informs the jury:

" '(i) that in order to return a verdict, each juror must agree thereto;

" '(ii) that jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;

" '(iii) that each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors;

" '(iv) that in the course of deliberations, a juror should not hesitate to reexamine his own views and change his opinion if convinced it is erroneous; and

" '(v) that no juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict.

" '(b) If it appears to the court that the jury has been unable to agree, the court may require the jury to continue their deliberations and may give or repeat an instruction as provided in subsection (a). The court shall not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.

" '(c) The jury may be discharged without having agreed upon a verdict if it appears that there is no reasonable probability of agreement.' "

needs no additional encouragement to reach a verdict since it is not even known whether or not they will have a difficult time in their deliberations in the first place. From a policy standpoint, then, the potential coercive effect of the sort of instruction contemplated in *Sullivan, supra,* should not be tolerated in a predeliberation setting since no counterbalancing purposes are served by its use. This becomes of even greater significance when one considers that the instant instructions were far more coercive and intimidating than those contemplated and recommended in *Sullivan, i.e.,* ABA 5.4. See footnote 1. And, as stated in *Sullivan, supra* at 342, "Any substantial departure therefrom shall be grounds for reversible error".

The instructions given did substantially depart from the recommended ABA instruction. Moreover, the instructions as given were such that they could have caused a juror to abandon his conscientious dissent and defer to the majority solely for the sake of reaching agreement. Such results have no place in a fair criminal justice system. Accordingly, we reverse and remand for a new trial.

Reversed and remanded.

D. C. RILEY, J., concurred.

DANHOF, C.J. *(dissenting).* This prosecution arose out of an incident on January 6, 1978, at about 3 a.m. That evening, Sharon Moore and James Hollis, went to a gambling house on Chene Street in Detroit. When they left at the same time, Hollis found a flat tire on his car. It appeared that someone had removed the cap from the valve stem and let the air out. He testified he "didn't like the looks of it". As a result, he asked Sharon Moore for a ride home. Moore and Hollis were driving westbound on I-94 freeway when she noticed a car

approximately four car lengths behind her, but not catching up. The next thing she knew, the car was next to her; she heard a gunshot, turned her head and saw defendant (she had known defendant for 14 months) hanging out the passenger side of the car, holding a gun. After the first shot, her car began to leave the road and spun three times. Each time the car spun, she saw defendant hanging out of the other car shooting back—she heard the sound of three shots and saw fire coming from the gun. Her car then violently left the road.

At the first shot, Hollis leaned forward to see around Moore and observed defendant (he had known defendant for approximately six years) leaning out the window of the passing car, holding a carbine—when the car got about two car lengths ahead, three more shots were fired. Hollis saw fire "jumping from the muzzle of the gun each time Kelly fired * * *".

Police officers transported Moore, who was wounded, and Hollis to a hospital. Within 20 minutes after the arrival of the police, statements were taken from Moore and Hollis. Both identified "Kelly" as the shooter. The police later observed bullet holes (four entrance and five exit holes) in Moore's auto. A spent slug was found in her car. When defendant was arrested, a .30-caliber bullet was found on his person. A State Police expert concluded that both bullets were .30-caliber, manufactured by Winchester Western.

Defendant testified that he was at home, asleep, at the time of the alleged incident. He claimed that a man named "Kinslow" had threatened Hollis' life some time in 1971 or 1972.

James Hollis was called in rebuttal and testified that Kinslow was his friend, never an enemy, and that he had known Kinslow for eight years.

I do not believe that the challenged instruction is reversible error. In context, the impact of the instruction is significantly attenuated:

"Any verdict which you reach will have to be unanimous. That means all twelve jurors will have to agree to a verdict of either guilty or not guilty.

"You should enter into your deliberations with an open mind, with a willingness to give serious consideration to the opinions of each other.

"Jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement unanimously, if it can be done without sacrifice of individual judgment. Each juror must decide the case for himself or herself, but only after an impartial consideration of the evidence with his fellow jurors.

"No juror should surrender his honest conviction or belief as to what the weight or effect of the evidence is solely because of the opinion of fellow jurors or for the mere purpose of returning a verdict. However, in the course of deliberations a juror should not hesitate to reexamine his own views and to change his opinion if convinced it is erroneous.

"Let me remind you that when a jury is unable to reach a verdict, the jury has not accomplished its purpose. A jury unable to agree, therefore, is a jury which has failed in its purpose. Each time such an indecisive jury fails, ammunition is given to those who oppose the jury system as we know it, a system that requires a unanimous vote of all twelve jurors for either conviction or acquittal. As you deliberate, please bear this in mind."

GCR 1963, 516.2 provides:

"Objections. No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider the verdict, stating specifically the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."

A similar requirement is contained in MCL 768.29; MSA 28.1052.

Defendant did not object to the above instruction even though an opportunity to make objection was granted. This Court has often followed the "no objection, no review" rule unless a miscarriage of justice would otherwise result. See, *People v Haney,* 86 Mich App 311, 318; 272 NW2d 640 (1978), *People v Sherman Hall,* 77 Mich App 456, 462; 258 NW2d 517 (1977). I do not find a miscarriage of justice present in this case.

The majority relies on *People v Sullivan,* 392 Mich 324; 220 NW2d 441 (1974), which dealt with supplemental instructions to a deadlocked jury. *Sullivan* adopted ABA standard jury instruction 5.4 as an instruction which would generate discussion toward the resolution of the case but avoid forcing a decision.

The majority feels that even a *Sullivan* (ABA standard) instruction should not be tolerated before deliberation since no purposes are served by its use.

I believe that such an instruction is more appropriate and less coercive before deliberation (In fact, ABA instruction 5.4 by its terms may be given prior to deliberation. See *Sullivan,* 392 Mich at 335). The instruction orients a jury to its role and minimizes the potential for juror coercion, for each juror will be told not to sacrifice individual judgment to majority opinion. A post deadlock instruction presents a much greater potential for coercion because the deadlocked jury has come to the trial judge "on the horns of a dilemma" seeking an answer to its problem. Thus, any instruction given by the judge will be taken to heart and, in isolation from the other instructions, will take on greater importance. On the other hand, a pre-

deliberation instruction is only one of many instructions. Since it is not presented as a solution to a deadlock, it will not be given special significance by the jury. It still serves the purposes of judicial economy and of encouraging the give and take of deliberation without doing violence to individual judgment.

Having concluded that a predeliberation instruction should not be tolerated, the majority concludes that the instant instruction was a substantial departure from ABA 5.4. Initially, it is not clear that the Supreme Court intended to apply its "substantial departure" rule to a predeliberation instruction. *Sullivan* dealt only with a supplemental instruction given after deliberation. Even applying this rule, I do not believe the court's instruction was a "substantial departure" in the sense of significantly increasing coercion. Prior to the instruction, the jury was told to "deliberate with a view to reaching an agreement unanimously, *if it can be done without sacrifice of individual judgment*" and that "No juror should surrender his honest conviction or belief as to what the weight or effect of the evidence is *solely because of the opinion of fellow jurors or for the mere purpose of returning a verdict*". (Emphasis added.) Read as a whole, I do not believe that the instruction could have caused a juror to abandon his conscientious dissent and defer to the majority solely for the sake of reaching agreement. On the facts of this case, I do not find a "miscarriage of justice" necessitating reversal.

I would affirm.