PEOPLE v ALLEN

Docket No. 46830. Submitted October 10, 1980, at Grand Rapids.— Decided January 6, 1981. Leave to appeal applied for.

Larry D. Allen was convicted of first-degree criminal sexual conduct and of assault with intent to commit criminal sexual conduct involving sexual penetration and was sentenced to prison, Berrien Circuit Court, Zoe S. Burkholz, J. He appeals, alleging that the trial court's instruction to the jury after having been informed that it was deadlocked was coercive. *Held:*

The deadlocked-jury instruction given by the trial court differed substantially from the charge adopted prospectively by the Supreme Court prior to defendant's trial, constituting error and requiring reversal.

Reversed and remanded.

CRIMINAL LAW — DEADLOCKED JURIES — JURY INSTRUCTIONS — ERROR — APPEAL.

Prospectively from August 2, 1974, a trial court in a criminal case, where confronted with a deadlocked jury, should instruct the jury: that in order to return a verdict, each juror must agree thereto, that jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement if it can be done without violence to individual judgment, that each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors, that in the course of deliberations a juror should not hesitate to reexamine his own view and change his opinion if convinced it is erroneous, and that no juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors or for the mere purpose of returning a verdict, and any substantial departure therefrom constitutes error and is grounds for reversal on appeal.

REFERENCES FOR POINTS IN HEADNOTE

[1] 76 Am Jur 2d, Trial § 1063.

Verdict urging instructions in civil case stressing desirability and importance of agreement. 38 ALR3d 1281.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *John A. Smietanka,* Prosecuting Attorney, and *Angela Baryames,* Assistant Prosecuting Attorney, for the people.

*Frank S. Spies,* for defendant.

Before: R. M. MAHER, P.J., and R. B. BURNS and D. F. WALSH, JJ.

R. M. MAHER, P.J. Defendant was convicted after a jury trial of first-degree criminal sexual conduct, MCL 750.520b(1)(a); MSA 28.788(2)(1)(a), and of assault with intent to commit criminal sexual conduct involving sexual penetration, MCL 750.520g(1); MSA 28.788(7)(1). He was sentenced to a prison term of from 15 to 40 years on the first-degree criminal sexual conduct conviction and to a prison term of from 5 to 10 years on the assault conviction. Defendant appeals as of right.

After less than four hours of deliberation, the jury informed the trial court that it was unable to reach a decision and wished further instructions. The record reveals that an unreported conference was then held in the trial court's chambers for the purpose of deciding what action would be taken on the jury's request.[1] At this conference defense counsel referred the trial court to the Supreme Court's decision in *People v Sullivan,* 392 Mich 324, 327-329; 220 NW2d 441 (1974), and suggested that the instruction which had been given at the trial in that case, which was reprinted in the

[1] By order dated April 17, 1980, this Court remanded the instant case to the trial court for an evidentiary hearing concerning the circumstances surrounding the giving of the *Allen* charge. At this hearing, held May 2, 1980, testimony was taken concerning what transpired at the unreported in-chambers conference. The principal point of contention at the hearing was whether the defendant was personally present at that conference. Given our disposition of this appeal, we now deem the resolution of that issue to be irrelevant.

Court's opinion in *Sullivan*, be read to the jury. The trial court read the instruction aloud and all counsel agreed that the instruction should be given.[2] Back in the courtroom, the trial court expressed its intention to give the instruction, and counsel for both sides, as well as the defendant, indicated for the record that there was no objection. After the instruction was given, the jury continued its deliberations for about two hours before reaching a verdict.

The sole issue on appeal concerns the giving of the *Allen*-type instruction.[3] In *Sullivan, supra*, the Supreme Court actually discussed two deadlocked-jury instructions. The first, which had been given at the trial in *Sullivan* and which was read to the jury in the instant case, was analyzed by the *Sullivan* Court to determine if it impermissibly coerced jurors into reaching a verdict. The Court decided that an *Allen*-type charge was not coercive per se and that the question of whether such an instruction was coercive in a particular case required a case-by-case determination. The Court in *Sullivan* concluded that the instruction given in that case was neither coercive per se nor coercive under the particular facts and circumstances presented.

The second *Allen*-type or deadlocked-jury instruction discussed in *Sullivan* was that found in § 5.4 of the standards relating to trial by jury promulgated by the ABA Project on Minimum Standards for Criminal Justice.[4] There is a delicate

---

[2] The instruction was taken practically verbatim from that reported in *Sullivan, supra*.

[3] See *Allen v United States,* 164 US 492; 17 S Ct 154; 41 L Ed 528 (1896).

[4] "Length of deliberations; deadlocked jury.

"(a) Before the jury retires for deliberation, the court may give an instruction which informs the jury:

"(i) that in order to return a verdict, each juror must agree thereto;

"(ii) that jurors have a duty to consult with one another and to

balance between the beneficial purposes of a dead-locked-jury instruction and such an instruction's undeniably coercive effect. The Court noted that in order to emphasize the former while minimizing the latter many jurisdictions had adopted the ABA standard. Agreeing with this trend, the Court prospectively adopted the ABA charge:

"[W]e are persuaded that any possible future danger of coercive effect by the giving of an *Allen*-type charge is one which can and should be avoided. An analysis of recent cases and commentaries confirms our belief that the better practice is to be found in the recommended ABA jury standard 5.4.

"Therefore, prospectively from the date of this opinion, the ABA standard jury instruction 5.4 as set forth herein is adopted by this Court. *Any substantial departure therefrom shall be grounds for reversible error.*" *Sullivan, supra,* 342. (Emphasis added.)

We believe that the Supreme Court in *Sullivan* intended to announce a prophylactic rule eliminat-

deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;

"(iii) that each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors;

"(iv) that in the course of deliberations, a juror should not hesitate to reexamine his own views and change his opinion if convinced it is erroneous; and

"(v) that no juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict.

"(b) If it appears to the court that the jury has been unable to agree, the court may require the jury to continue their deliberations and may give or repeat an instruction as provided in subsection (a). The court shall not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.

"(c) The jury may be discharged without having agreed upon a verdict if it appears that there is no reasonable probability of agreement."

Although the ABA charge by its own terms may be given prior to the start of deliberation, the timing of the charge presents a separate issue not presently before the Court. See *People v Goldsmith,* 94 Mich App 155; 288 NW2d 372 (1979).

ing the necessity of future appellate inquiry into the coercive effect of any number of possible variants on the *Allen* charge. One form was approved, and the Court clearly indicated its intent that only that form be used in the future. Because the new rule was made prospective, *Allen*-type charges in trials occurring before *Sullivan* were still subject to a case-by-case analysis, but the only case-by-case inquiry necessary in trials taking place after *Sullivan* involves whether the instruction given is a "substantial departure" from the ABA charge. See *People v Dupie,* 395 Mich 483, 492-493; 236 NW2d 494 (1975), *People v Lawson,* 56 Mich App 100, 106; 223 NW2d 716 (1974), *lv den* 395 Mich 766 (1975). To the extent that other decisions of this Court have suggested that deadlocked-jury instructions given in post-*Sullivan* trials are to be examined on a case-by-case basis *for their coercive effect,* we believe they were wrongly decided. See *People v Harman,* 98 Mich App 541; 296 NW2d 303 (1980), *People v Thompson,* 81 Mich App 348; 265 NW2d 632 (1978), *lv gtd on other grounds* 402 Mich 938 (1978).[5]

Analysis of the instruction given in the instant case reveals that it substantially differs from the ABA charge.[6] Clearly the two instructions differ drastically in form, but the substantive differences are equally as great. While the instruction actually given contains the essential points set out in the ABA charge, it goes much further and advises the jury that the inability to reach a consensus could lead to the downfall of the jury system, that

[5] We are presently unable to determine whether the trials in *Harman* and *Thompson* took place before or after *Sullivan.* Our disapproval of the analysis in these cases is based on the premise that the trials took place *after Sullivan.*

[6] Compare the instruction reported in *Sullivan, supra,* 327-329, with that reported in *Sullivan, supra,* 335.

no future jury should be supposed to be more intelligent or more impartial, that it should not be supposed that a new trial would produce more or clearer evidence, and that jurors in the minority should reconsider their positions in light of the fact that fellow jurors of equal honesty and intelligence reach a different conclusion. We are not concerned with whether such statements are true or whether they are coercive. Our sole inquiry is whether they represent a substantial departure from the ABA charge, and, on that point, we may only conclude that they do. It makes no difference that in *Sullivan* the Supreme Court held that the instruction challenged in the instant case was not coercive. The trial which we are reviewing took place after *Sullivan* so that questions of coercion are no longer involved. The Supreme Court could not have more clearly directed that the issue is no longer one of "coercion" but of "substantial departure" from the ABA charge. Accordingly, we find that the trial court erred in giving a deadlocked-jury instruction that substantially departed from the ABA charge adopted in *Sullivan.*

In light of the fact that defendant did not object to the instruction as given, the issue becomes whether the error in this case requires reversal. On this point also we believe the Supreme Court has clearly spoken. "Any substantial departure therefrom shall be grounds for *reversible* error." *Sullivan, supra,* 342. See *People v Goldsmith,* 94 Mich App 155; 288 NW2d 372 (1979).[7] Were the rule otherwise, appellate courts seeking to deter-

---

[7] Although *People v Tooks,* 55 Mich App 537; 223 NW2d 63 (1974), held that review of an *Allen*-type charge was foreclosed absent objection, that case involved a pre-*Sullivan* trial, so that the rule of *Sullivan* was inapplicable. The more recent case of *Thompson, supra,* involved a similar analysis, but our disapproval of the approach taken in *Thompson* has already been registered.

mine the presence or absence of "manifest injustice" would be plunged back into the sort of coercive-effect analysis the Supreme Court was attempting to avoid. While we do not condone the harboring of such error for purposes of appeal, we are convinced that the prophylactic rule of *Sullivan* requires the result we reach. At the time of the trial of the instant case, *Sullivan* had been law for just short of five years. This fact alone should have been sufficient to avoid the error in the instant case. In the pressure of the moment, however, the error was not avoided, and that error must be considered grounds for reversal.

Reversed and remanded for a new trial.