PEOPLE v BOOKOUT

Docket No. 54538. Submitted October 13, 1981, at Lansing.—Decided
     November 17, 1981.

   Charles M. Bookout was convicted of first-degree criminal sexual
     conduct, Oakland Circuit Court, Gene Schnelz, J. He appeals,
     alleging that the trial court's supplemental jury instruction
     after the jury reported that it was deadlocked was coercive.
     *Held:*

     The trial court deviated from strict compliance with the jury
     instructions prescribed by the Supreme Court in such circum-
     stances in *People v Sullivan,* 392 Mich 324 (1974), but the
     deviation was harmless. The spirit of the prescribed instruction
     was satisfied, and the overall impact of the challenged instruc-
     tion was not to coerce the jury.

     Affirmed.

1. CRIMINAL LAW — JURY INSTRUCTIONS — DEADLOCKED JURIES —
     APPEAL.

   Prospectively from August 2, 1974, a trial court in a criminal
     case, where confronted with a deadlocked jury, should instruct
     the jury: that in order to return a verdict each juror must
     agree thereto, that jurors have a duty to consult with one
     another and to deliberate with a view to reaching an agree-
     ment if it can be done without violence to individual judgment,
     that each juror must decide the case for himself, but only after
     an impartial consideration of the evidence with his fellow
     jurors, that in the course of deliberations a juror should not
     hesitate to reexamine his own view and change his opinion if
     convinced it is erroneous, and that no juror should surrender
     his honest conviction as to the weight or effect of the evidence
     solely because of the opinion of his fellow jurors or for the mere

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 5 Am Jur 2d, Appeal and Error § 810.
   75 Am Jur 2d, Trial § 610.
   76 Am Jur 2d, Trial § 1054 *et seq.*
   Instruction urging dissenting jurors in state criminal case to give
     due consideration to opinion of majority (Allen charge)—modern
     cases. 97 ALR3d 96.

purpose of returning a verdict, and any *substantial departure* therefrom constitutes error and is grounds for reversal on appeal.

2. CRIMINAL LAW — JURY INSTRUCTIONS — DEADLOCKED JURIES — APPEAL.

Coercion is a factor to be considered on appeal in determining whether supplemental criminal jury instructions given to a deadlocked jury substantially departed from the standard prescribed by the Supreme Court in *People v Sullivan,* 392 Mich 324 (1974); the length of time a jury spends deliberating subsequent to receiving the supplemental instructions is indicative of whether the instructions were coercive, and where a jury continues to debate in earnest after receiving an instruction, coercion is not present.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief Appellate Attorney, and *James A. Cherry,* Assistant Prosecuting Attorney, for the people.

*Frank J. Starkey,* for defendant on appeal.

Before: BASHARA, P.J., and R. B. BURNS and V. J. BRENNAN, JJ.

R. B. BURNS, J. Defendant was convicted of first-degree criminal sexual conduct, MCL 750.520(b)(1)(a); MSA 28.788(2)(1)(a). The only issue raised on appeal is whether the supplemental jury instruction given by the judge was a proper *Allen*-type[1] instruction.

On June 9, 1980, the jury began deliberations. Approximately two hours after the jury retired, the court received a note stating that the jury was deadlocked. The jury returned to the courtroom, and the trial judge supplemented the jury instruction. The jury was excused to resume deliberations

[1] *Allen v United States,* 164 US 492; 17 S Ct 154; 41 L Ed 528 (1896).

which continued through the working day. The deliberations recommenced the next day, and at about 4 o'clock that afternoon the verdict was returned.

The Supreme Court has endorsed the use of the American Bar Association (ABA) standard jury instruction 5.4[2] when a jury is deadlocked. *People v Sullivan,* 392 Mich 324; 220 NW2d 441 (1974). The ABA standards were adopted in response to dissatisfaction with the *Allen*-type charge which judges had long recited to juries. The *Allen* charge was objectionable because potentially it was coercive, prompting jurors to abandon their honest convictions just for the sake of reaching a verdict. *Sullivan, supra.* The well-thought-out ABA guidelines were found to produce a delicate equilibrium between the interests of avoiding a hung jury and the end product of a fair trial. Therefore, *Sullivan, supra,* 342, announced:

---

[2] The instruction, promulgated in the ABA project on Minimum Standards for Criminal Justice is as follows:

"(a) Before the jury retires for deliberation, the court may give an instruction which informs the jury:

"(i) that in order to return a verdict, each juror must agree thereto;

"(ii) that jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;

"(iii) that each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors;

"(iv) that in the course of deliberations, a juror should not hesitate to reexamine his own views and change his opinion if convinced it is erroneous; and

"(v) that no juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict.

"(b) If it appears to the court that the jury has been unable to agree, the court may require the jury to continue their deliberations and may give or repeat an instruction as provided in subsection (a). The court shall not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.

"(c) The jury may be discharged without having agreed upon a verdict if it appears that there is no reasonable probability of agreement."

"However, we are persuaded that any possible future danger of coercive effect by the giving of an *Allen*-type charge is one which can and should be avoided. An analysis of recent cases and commentaries confirms our belief that the better practice is to be found in the recommended ABA jury standard 5.4.

"Therefore, prospectively from the date of this opinion, the ABA standard jury instruction 5.4 as set forth herein is adopted by this Court. Any substantial departure therefrom shall be grounds for reversible error.

The judge in the instant case gave the first part of the supplemental instructions in accordance with the ABA guidelines. He went on to add:

"Now listen carefully to the next part. You should consider that the case should at some time be decided. That you are selected in the same manner and from the same sources from which any future jury must be. And there is no reason to suppose that the case will ever be submitted to twelve men and women more intelligent, more impartial or more competent to decide it or that more or clearer evidence will be produced on the one side or the other. And with this in mind it is your duty to decide the case, if you can conscientiously do so without surrendering your conscientious belief. Now you've really only worked about, oh, an hour and a half. And you've just begun. All right. So Mr. Shifman, would you please take this jury back."

The sole inquiry is whether or not the instruction here "substantially departed" from the ABA standards set forth in *Sullivan. People v Allen,* 102 Mich App 655; 302 NW2d 268 (1981). Although supplemental jury instructions are no longer exclusively to be judged against the standard of coerciveness, coercion is a factor to consider in determining if instructions have "substantially departed" from the ABA jury instructions. *People*

*v Goldsmith,* 94 Mich App 155; 288 NW2d 372 (1979), *aff'd* 411 Mich 555; 309 NW2d 182 (1981).

*Goldsmith, supra,* 159, in assessing a predeliberation instruction, utilized the "substantial departure" test, focusing on the instruction's coercive impact:

> "From a policy standpoint, then, the potential coercive effect of the sort of instruction contemplated in *Sullivan, supra,* should not be tolerated in a predeliberation setting since no counter-balancing purposes are served by its use. This becomes of even greater significance when one considers that the instant instructions were far more coercive and intimidating than those contemplated and recommended in *Sullivan, i.e.,* ABA 5.4. * * * And, as stated in *Sullivan, supra,* 342, 'Any substantial departure therefrom shall be grounds for reversible error'.
>
> "The instructions given did substantially depart from the recommended ABA instruction. Moreover, the instructions as given were such that they could have caused a juror to abandon his conscientious dissent and defer to the majority solely for the sake of reaching agreement."

Several factors must be examined to determine the propriety of supplemental jury instructions based on the ABA standards. The "length of time" a jury spends deliberating subsequent to receiving a supplemental instruction is indicative of whether the instruction is coercive. *People v Lovett,* 63 Mich App 656; 234 NW2d 749 (1975), *rev'd on other grounds* 396 Mich 101; 238 NW2d 44 (1976).

The jury, after listening to the supplemental instruction, deliberated for the rest of the day, was excused for the evening, and debated until the end of the next day before returning a verdict. Where the jury continued to debate in earnest after receiving the supplemental instruction, we cannot

set aside the verdict under the *Sullivan* test. The essential element of coercion is not present.

The trial judge deviated from strictly complying with the ABA jury instructions. Concededly, the trial judge would be well-advised to use the jury instructions endorsed in *Sullivan* as enunciated by the ABA. The trial judge's deviation, although not condoned, was harmless. The spirit of the ABA instruction still is satisfied here. The overall impact of the instruction was not to coerce the jury, but to stress the need to engage in full-fledged deliberations while maintaining the integrity of the judicial system. The language used does not fall within the Supreme Court's rule of "substantial departure" so as to require reversal.

Affirmed.