# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TORREAN JAQUAN BUCHANAN,

        Defendant-Appellant.

UNPUBLISHED
December 22, 2015

No. 318727
Wayne Circuit Court
LC No. 11-005619-FC

Before: SERVITTO, P.J., and WILDER and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of carjacking, MCL 750.529a; assault with intent to rob while armed, MCL 750.89; possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b; and two counts of assault with intent to do great bodily harm less than murder, MCL 750.84. The trial court sentenced defendant to 10 to 20 years' imprisonment for the carjacking conviction, 10 to 20 years' imprisonment for the assault with intent to rob while armed conviction, two years' imprisonment for the felony-firearm conviction, and 5 to 10 years' imprisonment for each of the assault with intent to do great bodily harm convictions. We affirm.

On the evening of January 16, 2011, Angela Sammons parked her car in her driveway after returning home from work. As she opened the door to get out, two men wearing black neoprene masks and armed with guns approached her. Angela shut her door and locked the vehicle. One of the men stood at the driver's side of her car, and the other man stood at the passenger side. They each pulled on the door handles and yelled for Angela to get out of the car.

During the incident, Angela's husband, Carl Sammons, opened the front door of the house, and Angela heard gunshots. Carl was shot in the abdomen. At this point, the men began to back away from Angela's car, and eventually drove off.

Angela testified that the man who approached the driver's side of her car pulled his mask down during the incident, exposing his entire face. At trial, Angela identified defendant as the man who approached the passenger side of her car. She testified that, although defendant never pulled his mask down, the mask covered only the bottom of his face and she could see his eyes, forehead, and hair. She looked directly at his face as he approached her car.

-1-

Approximately three or four days after the incident, Angela went to check her e-mail on her phone, but the Channel 4 WDIV webpage that she set as her homepage came up first. The top news story on the page displayed a picture of the two individuals who tried to rob her. Angela spoke with Sergeant Jason Marzette of the Detroit Police Department over the phone, and told him she saw pictures of the two men who tried to rob her on the WDIV website. Sometime following her conversation with Sergeant Marzette, Officer Deitrick Mott came to her home with photographs, and showed them to Angela and Carl separately. Angela identified both men who had been involved in the January 16, 2011, incident (one of whom was defendant) and Carl identified Lamont Friar as the man that had approached the driver's side of Angela's car and shot him. He never saw the second person that was outside of his home on the night of the incident.

Sergeant Marzette testified that he spoke with Angela over the phone regarding the photographs she saw on the WDIV website. He looked up the news story himself, and printed the photographs of Friar and defendant that Officer Mott later showed to Angela and Carl. When asked if the photograph he printed of defendant was the exact same picture from the news story, Sergeant Marzette said, "It's the -- I would say it's the same individual in the same pose." He printed the photographs in black and white. On redirect, Sergeant Marzette admitted that the source he got the photographs from was the same source the newspapers got them from, which was a law enforcement website.

Defendant first argues on appeal that the trial court abused its discretion by admitting into evidence the photographs of defendant and Friar that Officer Mott showed to Angela and Carl, because neither photograph was relevant to Angela's identification of defendant. Defense counsel did not object when the trial court admitted into evidence the photographs of Friar and defendant that Angela said she saw on the WDIV website, her testimony that the men in the pictures were the men that approached her vehicle, photographs of defendant Officer Mott showed her, or the photograph of defendant Officer Mott showed Carl. Defense counsel did, however, object to the admission of the photograph of Friar shown to her by Officer Mott, and a photograph of Friar police showed Carl.

To preserve a claim of evidentiary error, "a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001), citing MRE 103(a)(1) and *People v Grant*, 445 Mich 535, 545, 553; 520 NW2d 123 (1994). When an evidentiary issue has been preserved on appeal, this Court generally reviews the trial court's decision to admit evidence for an abuse of discretion, and reviews "de novo preliminary questions of law, such as whether a rule of evidence precludes admissibility." *People v Chelmicki*, 305 Mich App 58, 62; 850 NW2d 612 (2014). "A trial court abuses its discretion when its decision falls 'outside the range of principled outcomes.' " *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010), quoting *People v Smith*, 482 Mich 292, 300; 754 NW2d 284 (2008). "A preserved error in the admission of evidence does not warrant reversal unless, 'after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative.' " *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013), quoting *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999) (quotation and citation omitted). This Court reviews the admission of identification evidence for clear error. *People v Harris*, 261 Mich App 44, 51;

680 NW2d 17 (2004). "Clear error exists if the reviewing court is left with a definite and firm conviction that a mistake has been made." *Id*.

Unpreserved evidentiary claims are reviewed for plain error affecting substantial rights. *Chelmicki*, 305 Mich App at 62; MRE 103(d). A plain error affects substantial rights when "the error affected the outcome of the lower-court proceedings." *People v Jones*, 468 Mich 345, 356; 662 NW2d 376 (2003). Reversal is not warranted unless "the plain, unpreserved error resulted in the conviction of an actually innocent defendant or . . . seriously affected the fairness, integrity, or public reputation of the judicial proceedings independent of the defendant's innocence." *Id*. at 355.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence . . . more probable or less probable than it would be without the evidence." *People v Coy*, 258 Mich App 1, 13; 669 NW2d 831 (2003), quoting MRE 401. "[A] material fact need not be an element of a crime or cause of action or defense but it must, at least, be in issue in the sense that it is within the range of litigated matters in controversy." *People v Powell*, 303 Mich App 271, 277; 842 NW2d 538 (2013), quoting *People v Brooks*, 453 Mich 511, 518; 557 NW2d 106 (1996) (citations and quotation marks omitted). Generally, relevant evidence is admissible at trial while irrelevant evidence is not. MRE 402; *People v Benton*, 294 Mich App 191, 199; 817 NW2d 599 (2011). Evidence that is relevant may still be excluded if the "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403; see also *Feezel*, 486 Mich at 198. "Unfair prejudice exists when there is a tendency that evidence with little probative value will be given too much weight by the jury." *People v Danto*, 294 Mich App 596, 600; 822 NW2d 600 (2011), quoting *People v McGhee*, 268 Mich App 600, 614; 709 NW2d 595 (2005).

Angela's identification of defendant as the man who approached the passenger side of her car was the only evidence at trial directly linking defendant to the crimes and, during trial, defense counsel repeatedly questioned the accuracy of Angela's identification of defendant. On cross-examination, for example, defense counsel asked Angela if she described the man's hair color, eye color, or facial hair to police. Angela said no. Defense counsel then continued to question Angela regarding the lack of details she gave to police about defendant's appearance. Because Angela's ability to identify the man was directly at issue, her identification of defendant from the photograph shown to her by Officer Mott was relevant. It served to make the accuracy of Angela's identification of defendant more probable than it would have been without the evidence. Admission of the photograph itself would verify to the jury that defendant, and not another individual, was in fact the man in the picture. Further, the probative value of the evidence was not outweighed by any prejudicial effect Sergeant Marzette's testimony may have had. Sergeant Marzette did not testify in front of the jury regarding why defendant's photograph may have been on the law enforcement website, and gave no indication that defendant had been arrested for, or convicted of, any other crimes.

In addition, the trial court did not abuse its discretion when it admitted into evidence the photographs of Friar that Officer Mott had showed to Angela and Carl. Angela's identification of Friar was relevant because Angela's ability to identify the man who approached the driver's side of her car makes it more probable that she would also be able to identify the man who

approached the passenger side of her car. Carl's testimony that he also recognized Friar as the man who shot him served to bolster Angela's identification of Friar. Further, contrary to defendant's assertion, admission of Friar's photograph into evidence does not require any analysis under MRE 404(b) because it could not be considered evidence of other crimes or bad acts. The fact that the photograph came from a law enforcement website does not make this evidence more prejudicial than probative. Sergeant Marzette did not testify regarding why Friar's photograph may have been on the website.

In any case, Angela had already testified that she identified Friar and defendant as the men who approached her car from pictures in a news story she saw on the WDIV website. A connection between the two could be implied from this testimony. Those pictures were admitted into evidence with no objection from defense counsel, and Angela said that the pictures shown to her by Officer Mott were "pretty much" exactly the same as the pictures she saw independently on the WDIV website.

Defendant next argues that he is entitled to a new trial because the trial court gave improper instructions to the deadlocked jury. He asserts that the statements made by the trial court were unduly coercive. We disagree.

To preserve an instructional error, a party must object to the instruction. *People v Galloway*, 307 Mich App 151, 157; 858 NW2d 520 (2014), citing *People v Sabin* (*On Second Remand*), 242 Mich App 656, 657-658; 620 NW2d 19 (2000); MCR 2.512(C)[1]. Defendant failed to preserve this issue because defense counsel did not object to the trial court's instructions. This Court has stated, "Absent an objection or request for an instruction, this Court will grant relief only when necessary to avoid manifest injustice." *Id*. This Court reviews unpreserved claims of instructional error for plain error affecting substantial rights. *Aldrich*, 246 Mich App at 124-125, citing *People v Carines*, 460 Mich 750, 761-764, 774; 597 NW2d 130 (1999).

In *People v Sullivan*, 392 Mich 324, 342; 220 NW2d 441 (1974), the Supreme Court adopted the ABA standard jury instruction 5.4 for a deadlocked jury, and concluded that "[a]ny substantial departure therefrom shall be grounds for reversible error." The Michigan Model Criminal Jury Instructions have incorporated the standard adopted in *Sullivan*. *People v Pollick*, 448 Mich 376, 382 n 12; 531 NW2d 159 (1995).

A trial court's statements to the jury will amount to a substantial departure from the appropriate deadlocked jury instructions if those statements are unduly coercive. *Galloway*, 307

---

[1] MCR 2.512(C) states:

> A party may assign as error the giving of or the failure to give an instruction only if the party objects on the record before the jury retires to consider the verdict (or, in the case of instructions given after deliberations have begun, before the jury resumes deliberations), stating specifically the matter to which the party objects and the grounds for the objection. Opportunity must be given to make the objection out of the hearing of the jury.

Mich App at 164, citing *People v Hardin*, 421 Mich 296, 314; 365 NW2d 101 (1984). Additional language rarely amounts to a substantial departure where such language "contains 'no pressure, threats, embarrassing assertions, or other wording that would cause this Court to feel that it constituted coercion . . . .' " *Hardin*, 421 Mich at 315, quoting *People v Holmes*, 132 Mich App 730, 749; 349 NW2d 230 (1984). "The optimal instruction will generate discussion directed towards the resolution of the case but will avoid forcing a decision." *Id*. at 316, quoting *Sullivan*, 392 Mich at 334. To determine whether an instruction was coercive, this Court may consider the amount of time the jury continued to deliberate after being given the instruction. *People v Bookout*, 111 Mich App 399, 403; 314 NW2d 637 (1981). The instruction should also be read in context. *Hardin*, 421 Mich at 321.

Here, approximately 3 ½ hours into deliberations, the trial court received a note from the jury asking what would happen if it could not come to a decision. Before reading the deadlocked jury instruction, M Crim JI2d 3.12, in its entirety, the trial court stated, "This is way too early. You haven't even asked for any exhibits, let alone possible read back of testimony. You have to devote yourself to this. Get yourself immersed in it." The jury returned to deliberations for approximately 20 minutes before being excused for the evening.

No part of the trial court's statement contained any threats or embarrassing assertions. The trial court simply asked the jury to take more time for its consideration of the evidence. In addition, the trial court read the appropriate deadlocked jury instruction, stating that the jurors should not give up their honest beliefs in order to reach an agreement, *after* making its initial statements. Any coercive effect the trial court's supplemental comments may have had would have been mitigated by the court's subsequent reading of the correct instruction. Further, according to the trial transcripts, the jury continued to deliberate for approximately four hours the following day, after being given the instruction and before reaching its decision. The trial court's statements did not amount to plain error affecting defendant's substantial rights.

Finally, defendant argues that the prosecutor committed misconduct in her opening statement by stating that Friar's case had already been resolved, and during closing arguments when she stated facts not in evidence. We disagree.

In her opening statement, the prosecutor said, "Ladies and gentlemen, the evidence is going to show that the two individuals, one of them was Lamont Friar who is not here today. His case -- that's nothing you should be concerned about. That case has already been heard. The other individual, the evidence will show, is this person, Torrean Buchanan. That's why we're here." Defendant asserts he is entitled to a new trial because, from this statement, the jury would assume Friar had been convicted.

To preserve a claim of prosecutorial misconduct, a defendant must contemporaneously object to the alleged misconduct and ask for a curative instruction. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). If a defendant fails to timely and specifically object below, review is generally precluded "except when an objection could not have cured the error, or a failure to review the issue would result in a miscarriage of justice." *People v Unger*, 278 Mich App 210, 234-235; 749 NW2d 272 (2008), quoting *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003). Defendant failed to preserve this claim because defense counsel did not object on the record to the prosecutor's opening statement.

Claims of prosecutorial misconduct that have not been preserved are reviewed for "outcome-determinative, plain error." *Unger*, 278 Mich App at 235. This Court "consider[s] issues of prosecutorial misconduct on a case-by-case basis by examining the record and evaluating the remarks in context, and in light of defendant's arguments." *People v Thomas*, 260 Mich App 450, 454; 678 NW2d 631 (2004). "Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Unger*, 278 Mich App at 235, quoting *Callon*, 256 Mich App at 329.

Defendant's first claim of prosecutorial misconduct lacks merit, and defendant is not entitled to a new trial. In general, evidence of a codefendant's conviction for the same crime the defendant has been accused of is not admissible in the defendant's separate trial. *People v Kincade*, 162 Mich App 80, 84; 412 NW2d 252 (1987); see also *People v Barber*, 255 Mich App 288, 297; 659 NW2d 674 (2003).

Here, the prosecutor did not reveal Friar's conviction. She only stated that the jury should not consider Friar's case because it had already been heard. Further, the trial court instructed the jury, both before trial and after trial, that the attorneys' opening statements should not be considered evidence. Curative instructions will cure most inappropriate prosecutorial statements, and it is presumed that jurors will follow their instructions. *Unger*, 278 Mich App at 235.

Even if the prosecutor's statements amounted to plain error, reversal is not warranted here. Angela testified at trial that two men approached her car with guns, and that she identified both men from pictures in the same news story on the WDIV website. From this testimony, one would most likely assume that the codefendant had also been charged with the crimes. The prosecutor's statement, then, which did not disclose the disposition of Friar's case, would most likely not have affected the outcome of defendant's trial.

In his Standard 4 brief, defendant argues that the prosecutor committed misconduct when she stated facts not in evidence during her closing argument. Specifically, she stated that Javon Knight, defendant's alibi witness, testified to knowledge of a relationship between Friar and defendant.

Defendant preserved this claim on appeal because defense counsel objected to the prosecutor's comments on the basis that she argued facts not in evidence. Preserved claims of prosecutorial misconduct are reviewed de novo to determine if the defendant was denied a fair and impartial trial. *Thomas*, 260 Mich App at 453. This Court "consider[s] issues of prosecutorial misconduct on a case-by-case basis by examining the record and evaluating the remarks in context, and in light of defendant's arguments." *Id*. at 454. "[A] preserved, nonconstitutional error is not a ground for reversal unless after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." *People v Brownridge* (*On Remand*), 237 Mich App 210, 216; 602 NW2d 584 (1999), quoting *Lukity*, 460 Mich at 496 (internal quotation omitted).

In her closing argument, the prosecutor said, "We know, based upon the testimony of Mr. Knight who, well meaning, is related to the defendant and was high for most of the time that this

was happening, that there might be a relationship between the two people, Mr. Friar and Mr. Buchanan, the two people that she saw on that WDIV Click on 4 story." Contrary to the prosecutor's assertion, Knight never testified that he knew of a relationship between Friar and defendant. Instead, Knight testified as follows:

> *Q*. And did you know that his mother used to be a Friar and that Lamont Friar and Torrean Buchanan are cousins, did you know that?
>
> *A*. No, I didn't.
>
> *Q*. Yeah, they're family. . . .

A prosecutor cannot make a statement of fact in its closing argument that is not supported by the evidence, but may make reasonable inferences from evidence admitted at trial. *Unger*, 278 Mich App at 241.

Nevertheless, when the prosecutor's statements are viewed in the context of all the evidence presented at trial, they did not deny defendant a fair and impartial trial. The jury had most likely already inferred a connection between the two from Angela's testimony that she identified them from a news story on the WDIV website featuring both of their pictures. In addition, the trial court instructed the jury that closing arguments should not be considered evidence, and that the jury should only accept those things said by the attorneys that are supported by the evidence. Curative instructions will cure most inappropriate prosecutorial statements, and it is presumed that jurors will follow their instructions. *Id*. at 235.

Affirmed.

/s/ Deborah A. Servitto
/s/ Kurtis T. Wilder
/s/ Mark T. Boonstra

-7-