## PEOPLE v TATE

Docket No. 70532. Submitted March 14, 1984, at Lansing.—Decided
    May 15, 1984.

Defendant, Daniel F. Tate, was convicted of delivery of cocaine
    following a jury trial in the Clinton Circuit Court. The trial
    court, Randy L. Tahvonen, J., sentenced defendant to from 10
    to 20 years imprisonment. Defendant appeals alleging several
    errors. *Held:*

1. The trial court did not err in denying the defendant's
    motion to suppress any testimony and identifications obtained
    as a result of certain observations made by police officers. The
    defendant did not have a reasonable expectation of privacy in
    the area allegedly searched, his driveway, and the observing
    officers were in areas they had a right to be in, thus, no
    constitutionally prohibited search occurred. The testimony con-
    cerning the officers' observations was properly admitted at
    trial.

2. Defendant was not denied due process as the result of the
    intentional destruction of certain evidence by the police. The
    evidence, plastic bags containing marijuana, was not evidence
    favorable to the defendant and was not material to defendant's
    guilt or innocence of the delivery of cocaine charge.

3. An instruction to the effect that had the destroyed evi-

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 881.
[2, 3] 68 Am Jur 2d, Searches and Seizures § 16.
[4, 5] 16A Am Jur 2d, Constitutional Law §§ 847, 848.
    29 Am Jur 2d, Evidence § 178.
[6] 75 Am Jur 2d, Trial § 769.
[7] 8 Am Jur 2d, Bail and Recognizance § 36.
[8-10] 25 Am Jur 2d, Drugs, Narcotics, and Poisons § 17.
[8] 73 Am Jur 2d, Statutes § 100.
[9] 25 Am Jur 2d, Drugs, Narcotics, and Poisons § 19.
[11] 25 Am Jur 2d, Drugs, Narcotics, and Poisons § 45.
    75 Am Jur 2d, Trial §§ 719, 720.
[12] 5 Am Jur 2d, Appeal and Error § 891.
[13] 75 Am Jur 2d, Trial §§ 983, 990.
    Unauthorized view of premises by juror or jury in criminal case as
        ground for reversal, new trial, or mistrial. 58 ALR2d 1147.

dence been produced it would have been favorable to the defendant is not appropriate in situations, such as in this case, where the evidence was known or at least within the sphere of knowledge of the defendant, no effort was made to ensure its production at trial, and the evidence is not material to the issues at trial.

4. There is no basis for defendant's claim that the Court of Appeals was required to explain its order denying him bond pending appeal.

5. The controlled substance provisions of the Public Health Code do not violate the title-object clause of the Michigan Constitution.

6. The classification of cocaine as a narcotic does not violate constitutional guarantees of equal protection and due process. The penalties prescribed by statute do not constitute cruel and unusual punishment.

7. The controlled substance provisions of the Public Health Code do not infringe upon fundamental rights of liberty and privacy.

8. There were no errors in the trial court's instructions on the elements of delivery of cocaine. The trial court did not err in refusing to give a specific intent instruction.

9. There was no manifest injustice as a result of the trial court's allegedly erroneous jury instructions regarding a jury view of certain premises. Defendant failed to object to such instructions.

10. Prejudice requiring reversal did not result from an unauthorized visit by two jurors to the bar where the transfer of drugs was alleged to have occurred. Any error was cured by sending the entire panel to the scene.

11. Reversible error did not result as a result of the fact that one of the jurors had previously worked at the bar, given the quantum of evidence presented, the lack of any identifiable prejudice and the fact that all the jurors had the opportunity to observe the bar.

Affirmed.

1. APPEAL — MOTIONS AND ORDERS.

A trial court's ruling on a motion to suppress evidence will not be disturbed on appeal unless it is clearly erroneous; the Court of Appeals will not reverse unless it is left with a definite and firm conviction that the trial court erroneously decided the motion.

2. CONSTITUTIONAL LAW — SEARCHES AND SEIZURES.

The Fourth Amendment protects people, not places, therefore, what a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection (US Const, Am XIV).

3. CONSTITUTIONAL LAW — SEARCHES AND SEIZURES — PRIVACY.

The focus of the inquiry of whether an individual had a reasonable expectation of privacy in the area allegedly searched centers on the individual rather than the particular area searched in determining whether a constitutionally prohibited search occurred (US Const, Am XIV).

4. CONSTITUTIONAL LAW — CRIMINAL LAW — DUE PROCESS — EVIDENCE — WITHHOLDING EVIDENCE.

A denial of due process based on the withholding of evidence will not be found where no request for production of the evidence had been made unless the evidence was sufficient to create a reasonable doubt which might not otherwise have existed.

5. CONSTITUTIONAL LAW — CRIMINAL LAW — DUE PROCESS — EVIDENCE — WITHHOLDING EVIDENCE.

A showing that withheld evidence was material for purposes of a claim of denial of due process requires a showing greater than that the evidence might have affected the verdict; the omitted evidence is considered material if it may create a reasonable doubt.

6. CRIMINAL LAW — JURY INSTRUCTIONS — EVIDENCE — WITHHOLDING EVIDENCE.

An instruction to the effect that had evidence withheld by the prosecution been produced it would have been favorable to the defendant is not appropriate in a criminal case where the withheld evidence was known or at least within the sphere of knowledge of the defendant, no effort was made to ensure its production at trial, and the evidence is not material to the issues at trial.

7. CRIMINAL LAW — BAIL FOLLOWING CONVICTIONS.

A criminal defendant, following his conviction, is no longer entitled to the presumption of innocence and release on bail or bond becomes a matter of discretion, not of right (MCL 765.6[1], 770.9; MSA 28.893[1], 28.1106).

8. CONSTITUTIONAL LAW — CONTROLLED SUBSTANCES — PUBLIC HEALTH CODE.

The controlled substance provisions of the Public Health Code do

not violate the title-object clause of the Michigan Constitution (Const 1963, art 4, § 24).

9. CONSTITUTIONAL LAW — CONTROLLED SUBSTANCES — PUBLIC HEALTH CODE — COCAINE.

The classification of cocaine as a narcotic in the controlled substance provisions of the Public Health Code does not violate the constitutional guarantees of equal protection and due process or the prohibition against cruel and unusual punishment.

10. CONSTITUTIONAL LAW — CONTROLLED SUBSTANCES — PUBLIC HEALTH CODE.

The controlled substance provisions of the Public Health Code do not infringe upon an individual's fundamental rights of liberty and privacy.

11. TRIAL — JURY INSTRUCTIONS.

A trial court properly instructs a jury in a trial for delivery of cocaine where it instructs that delivery required both knowledge of the nature of the substance and an intent to deliver the substance to another (MCL 333.7401, subds [1], [2][a][iii]; MSA 14.15[7401], subds [1], [2][a][iii]).

12. APPEAL — JURY INSTRUCTIONS.

The Court of Appeals will review a jury instruction not objected to in the trial court and reverse for an impropriety in an instruction only where manifest injustice would result from a failure to consider the issue.

13. TRIAL — JURY VISITS.

Any error resulting from an independent and unsupervised visit by members of a jury panel to a scene relevant to a criminal trial is cured where the entire panel is thereafter sent to the scene for a view.

*Frank J. Kelley*, Attorney General, *Louis J. Caruso*, Solicitor General, *Jon Newman*, Prosecuting Attorney, and *Richard L. Koenigsknecht*, Chief Assistant Prosecutor, for the people.

*Richard G. Chosid*, for defendant.

Before: SHEPHERD, P.J., and ALLEN and A. E. KEYES,* JJ.

* Circuit judge, sitting on the Court of Appeals by assignment.

PER CURIAM. Defendant appeals as of right from his January 26, 1983, jury conviction of delivery of cocaine, MCL 333.7401, subds (1), (2)(a)(iii); MSA 14.15(7401), subds (1), (2)(a)(iii). On February 28, 1983, he was sentenced to from 10 to 20 years imprisonment.

Defendant's conviction for his March 31, 1982, delivery of cocaine resulted from an undercover operation of the Tri-County Metro Narcotics Squad. Robert Fisher, an East Lansing police officer, and Brian Smolley, a police informant, were the principal actors in this particular undercover operation. Other police officers, including Lieutenant Whitford, Deputy Rojeski, and Officer Young, conducted surveillance.

Testimony at trial indicated that Smolley and Fisher went to a residence in Lansing, Michigan, and met with an individual named Shone Six to purchase cocaine. Although Smolley and Fisher observed a baggie containing a white substance believed to be cocaine at that time, no drugs were purchased. Instead, the two men followed Six to another location. Fisher gave Six sufficient money for the purchase of one ounce of cocaine. Six then returned to his vehicle and proceeded down a street out of the sight of Smolley and Fisher, who remained at the intersection waiting for Six's return.

Whitford, who had begun surveillance of the two vehicles at the Lansing residence where Fisher and Smolley had met Six, followed Six after he left Fisher and Smolley at the intersection. Whitford trailed Six to a dead-end road where defendant's house was located. He did not follow Six down the road, rather he parked his vehicle in a church parking lot and proceeded through a wooded field area on foot. He observed Six's vehicle parked in the driveway of a house at the end of the road.

When Six left defendant's house, he was followed by members of the surveillance team. When he arrived at the intersection, he returned the money to Fisher and all three men proceeded to a nearby bar. After waiting in the bar for approximately 45 minutes, Six left the bar and got into a red Lincoln automobile in the parking lot. At trial, Fisher identified defendant as the occupant of the red Lincoln. Six then re-entered the bar and all three men returned to Smolley's vehicle where Six gave Fisher two baggies containing a white powdery substance which was identified at trial as over 100 grams of cocaine.

Meanwhile, the surveillance team had observed the Lincoln in the bar parking lot and obtained its license plate number. After Six exited from the vehicle, Whitford followed the Lincoln to the dead-end road leading to defendant's home. Whitford and Rojeski walked down the roadway and observed the Lincoln parked in the same driveway where Six had previously parked. The residence where the Lincoln was parked was secured by Rojeski and other officers while Whitford returned to the bar to obtain a description of the driver of the Lincoln from Fisher. Later that same evening a search warrant was executed and various items seized.

Defendant first argues that the trial court erroneously denied his mid-trial motion to suppress any testimony and identifications obtained as a result of allegedly illegal searches by Lt. Whitford and Deputy Rojeski. Defendant asserts that the officers trespassed upon private property and invaded his reasonable expectation of privacy without probable cause or exigent circumstances. The basis for defendant's claim is the observation of Six's vehicle made by Whitford from the wooded

area and the observations of the red Lincoln made by Whitford and Rojeski from the roadway. After conducting a suppression hearing, the trial court made detailed findings of fact and denied defendant's motion. Specifically, the court found: (1) neither of the observations involved a trespass by the officers, (2) the road from which Rojeski and Whitford observed the Lincoln was a private road/ private easement, and (3) the road had all the indicia and appearance of a roadway open to the public. Based upon the foregoing facts, the court determined: that there had been "no observation which [was] subject to the constraints imposed by the Fourth Amendment"; that even if there had been a technical trespass, it was limited to an area beyond the curtilage of defendant's property and was thus subject to the open field exception of *Hester;*[1] and, further, that defendant had no reasonable expectation of privacy with regard to the driveway where the vehicles were observed.

A ruling by the trial court on a motion to suppress evidence will not be disturbed on appeal unless it is clearly erroneous. *People v Julkowski,* 124 Mich App 379; 335 NW2d 47 (1983); *People v Grimmett,* 97 Mich App 212; 293 NW2d 768 (1980). Given the special opportunity of the trial court to observe the demeanor of the testifying witnesses and to assess their credibility, we will not reverse unless we are left with a definite and firm conviction that the trial court erroneously decided the motion. Our review of the record discloses no error in the ruling below.

While recognizing the general rule that searches conducted without a warrant are per se unreasonable under the Fourth Amendment, subject to

---

[1] *Hester v United States,* 265 US 57; 44 S Ct 445; 68 L Ed 898 (1924).

certain well-recognized exceptions, before invoking the general rule it must first be determined whether a search has occurred. *Katz v United States,* 389 US 347, 357; 88 S Ct 507; 19 L Ed 2d 576 (1967). As noted by the Supreme Court in *Katz,* p 351, "the Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection". Thus, the question is whether defendant had a reasonable expectation of privacy in the area allegedly searched, which in this case is his driveway. We agree with the trial court that defendant did not have a reasonable expectation of privacy and that no constitutionally prohibited search occurred.

We note that the area involved in the present case, a driveway, would most likely be considered as within the curtilage of defendant's home. See *People v Taylor,* 2 Mich 250 (1851). The question of whether a search occurred, however, is not to be determined by somewhat outdated property concepts. Moreover, the trial court determined, and we agree, that the officers did not trespass upon any land owned by defendant at the time they made their observations. The focus of the inquiry must center on the individual rather than the particular area searched in determining whether the individual had a reasonable expectation of privacy. *People v Taormina,* 130 Mich App 73; 343 NW2d 236 (1983); *Katz, supra.*

In the present case, the trial court found that defendant did not have a reasonable expectation of privacy based upon the testimony of neighbors regarding the nature and extent of the traffic on the roadway. Although recognizing the status of the road as private, the court noted that it looked

like and had been treated as a public right-of-way and was used by not only defendant, his neighbors and their guests, but also by members of the general public. Although the testimony in this respect was conflicting, as was the testimony concerning the existence and placement of "No Trespassing" signs, we find no basis for substituting our judgment for that of the trial court.

Defendant places great emphasis upon the testimony of the officers that they "crept" down the "private roadway", "being very careful" and "peering around" once they neared the end of the roadway, in support of his claimed invasion of privacy. These comments were presented to the trial court and were considered, along with other testimony, in its decision. We find the officers' characterization of their activities to be insufficient evidence of an illegal search or seizure. In any surveillance operation, secrecy and surreptitious behavior are the norm; simply because the officers proceeded cautiously and undercover in an area in which they had a right to be does not magically strip their observations of their legal character and result in an illegal search. The officers were legally on the roadway when they made their observation of the red Lincoln and Lt. Whitford was in a wooded field not owned or claimed by defendant at the time he observed Six's vehicle in defendant's driveway. Because defendant had no reasonable expectation of privacy in an area he knowingly exposed to the public and because the officers were in areas they had a right to be in, the observation of the vehicles in defendant's driveway did not constitute a search within the meaning of the Fourth Amendment. Testimony concerning the officers' observations was properly admitted at trial.

Next, relying on *Brady v Maryland,* 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963), defendant claims that he was denied due process of law and a fair trial as a result of the intentional destruction of evidence which allegedly may have been beneficial to his case. We find defendant's reliance on the cited case to be misplaced and find no due process violation. First, unlike the situation in *Brady,* there was no specific pretrial request for the production of the suppressed evidence. Secondly, the evidence destroyed, plastic bags containing marijuana, was listed on the return of the search warrant and, although defense counsel moved to suppress all of the evidence seized pursuant to the warrant, no request for its production was made. Further, where the evidence withheld was not requested by defense counsel, a denial of due process will only be found where the evidence was sufficient to create a reasonable doubt which might not otherwise have existed. *United States v Agurs,* 427 US 97; 96 S Ct 2392; 49 L Ed 2d 342 (1976).

In the present case, defendant argued that the bags of marijuana were of critical importance to his defense because, if they were different from the plastic bags which contained the cocaine, they would provide support for his theory that he did not supply the cocaine to Shone Six. For constitutional purposes, to establish the materiality of omitted evidence requires a showing greater than that the evidence "might" have affected the verdict; omitted evidence is considered material if it creates a reasonable doubt. *Agurs, supra; People v Somma,* 123 Mich App 658; 333 NW2d 117 (1983). Here, defendant was identified as the individual in the red Lincoln prior to Six's delivery of the cocaine to Fisher, Six's vehicle was seen at defen-

dant's home before the delivery occurred, and finally, defendant's fingerprint was found on one of the bags of cocaine. We find nothing to suggest that the bags of marijuana were evidence favorable to the defendant, nor do we find that the destroyed evidence was material to defendant's guilt or innocence of the charged offense.

Given our resolution of this issue, we note that defendant was not entitled to either dismissal or an instruction that had the evidence been produced it would have been favorable to the defendant. Such an instruction is not appropriate in situations such as the case at bar where the evidence was known or at least within the sphere of knowledge of the defendant, no effort was made to ensure its production at trial, and the evidence is not material to the issues at trial. We also note that defendant was charged with delivery of cocaine and not with any offense relating to possession, distribution, or delivery of marijuana. Although it appears that the *marijuana* was intentionally destroyed, we find no support for the view that the law enforcement officers acted in an intentional manner to destroy relevant and material evidence. The destruction of this evidence occurred prior to any defense request and does not appear to have been motivated by any bad faith or improper motive. See *People v Oliver,* 111 Mich App 734; 314 NW2d 740 (1981); *Somma, supra.* We caution prosecutors and law enforcement personnel to avoid the creation of prejudicial and reversible error by virtue of the destruction of evidence thought to be immaterial, unrelated, or simply irrelevant. The better approach might well be to keep all evidence until the criminal prosecution is concluded without concern for its value at trial. Given the facts of the present situation, however,

we are convinced that error of a constitutional magnitude did not occur.

Defendant's remaining allegations of error require neither reversal nor extensive discussion. We find no basis for defendant's claim that this Court is required to explain its April 29, 1983, order denying him bond pending appeal. GCR 1963, 790.5 and *People v Spicer,* 402 Mich 406; 263 NW2d 256 (1978), apply to pretrial release situations. Following conviction, the defendant is no longer entitled to the presumption of innocence and release on bail or bond becomes a matter of discretion, not of right. See MCL 765.6(1), 770.9; MSA 28.893(1), 28.1106. Given this Court's prior exercise of discretion, we perceive no reason to disturb or explain the order denying defendant's request for bond pending appeal.

Defendant next claims that the controlled substance provisions of the Public Health Code violate the title-object clause of the Michigan Constitution, Const 1963, art 4, § 24. We disagree. See *People v Trupiano,* 97 Mich App 416; 296 NW2d 49 (1980), *lv den* 409 Mich 895 (1980). Nor do we find that the classification of cocaine as a narcotic violates constitutional guarantees of equal protection and due process. See *People v Harman,* 124 Mich App 93; 333 NW2d 591 (1983), *lv den* 417 Mich 1100.45 (1983); *People v Kaigler,* 116 Mich App 567; 323 NW2d 486 (1982). Challenges to the penalty provisions on the basis of cruel and unusual punishment have also been consistently rejected by panels of this Court. See *Kaigler, supra; People v Key,* 121 Mich App 168; 328 NW2d 609 (1982). Finally, we find no merit to defendant's claim that the controlled substance provisions of the Public Health Code infringe upon his fundamental rights of liberty and privacy. See *People v Stout,* 116 Mich App 726; 323 NW2d 532 (1982).

Defendant alleges error in regard to three separate jury instructions. We find no error in the trial court's instructions on the elements of the charged offense: delivery of cocaine. Contrary to defendant's assertion, the trial court properly instructed the jury on the element of delivery and was not required to give CJI 12:2:03(2) and (3) [subsequently revised on June 4, 1983] inasmuch as those instructions are applicable to cases where the defendant is charged with attempted delivery, a situation quite different from the present case. We also find no error in the trial court's refusal to give a specific intent instruction. As in *People v Elmore,* 94 Mich App 304; 288 NW2d 416 (1979), we find that the instructions properly informed the jury that delivery required both knowledge of the nature of the substance and an intent to deliver the substance to another.

Next, defendant claims that reversal is required because the trial court gave allegedly erroneous instructions regarding a jury view of certain premises. At defendant's request, the jury was taken to the bar where the transfer of the drugs was alleged to have occurred. The trial court gave a brief instruction to the jury prior to the view and again in its closing instructions. The instructions given did deviate from CJI 4:7:01, however, no objection was raised to either instruction. Absent a timely and specific objection, this Court will only review an instruction and reverse if manifest injustice would result from failure to consider the issue. *People v Velasquez,* 125 Mich App 1; 335 NW2d 705 (1983); *People v Haney,* 86 Mich App 311; 272 NW2d 640 (1978). The purpose of the objection requirement is to allow the trial court to effect an immediate correction, thus curing any potential prejudice. We find no manifest injustice in this situation and we decline to reverse. There is no

indication that the jurors were confronted during their visit to the bar with anything not covered by the testimony and evidence admitted at trial. We refuse to speculate that the jurors might have been affected by outside influences; any error or prejudice could have been avoided by a timely objection at trial.

In conjunction with the above alleged error, defendant claims that he is entitled to reversal of his conviction due to claims that two jurors made an independent and unsupervised visit to the bar. We find no prejudice requiring reversal. As noted in *People v Kudla,* 223 Mich 137; 193 NW 844 (1923), any error resulting from the unauthorized visit to the bar by members of the jury panel is cured by sending the entire panel to the scene.

Nor do we find that defendant was denied a fair trial by the post-trial discovery that one of the jurors had previously worked at the bar. This fact was apparently disclosed to the trial court but not to defense counsel during trial. While we believe that the better practice would have been to inform counsel and to have the juror examined on the record to determine whether his employment would have affected his ability to decide the case fairly, we believe neither reversal nor a remand is required. Presumably, the fact of this juror's prior employment could have been discovered on voir dire and this fact alone would not have precluded him from sitting as a member of the jury panel. Given the quantum of evidence presented, the lack of any identifiable prejudice, and the fact that all of the jurors had the opportunity to observe the bar, we find no reversible error.

We have reviewed defendant's allegations of error and find none which merit reversal. Thus, we affirm the conviction and sentence imposed below.