# Court of Appeals, State of Michigan

## ORDER

People of MI v Cisco Destin Green

Docket No.     331411

LC No.         11-007497-01-FC

Thomas C. Cameron
Presiding Judge

Karen M. Fort Hood

Elizabeth L. Gleicher
Judges

This Court orders that the motion to clarify/correct opinion is GRANTED because on page 3 of the opinion, in the first paragraph, fourth sentence, this Court's May 15, 2018 opinion erroneously states "Cain described clothing later attributed to defendant's accomplice, Jarrell Green, who was arrested later that night while pumping gas into a white van." To correct this error, the Court orders that the May 15, 2018 opinion is hereby VACATED, and issues the attached opinion.

/s/ Thomas C. Cameron

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

June 12, 2018
Date

Chief Clerk

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CISCO DESTIN GREEN,

Defendant-Appellant.

UNPUBLISHED
June 12, 2018

No. 331411
Wayne Circuit Court
LC No. 11-007497-01-FC

Before: CAMERON, P.J., and FORT HOOD and GLEICHER, JJ.

PER CURIAM.

A jury convicted defendant of armed robbery, MCL 750.529, possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, and felon in possession of a firearm, MCL 750.224f, for robbing a woman at gunpoint in a parking lot. Defendant challenges the admission of other-acts evidence, the sufficiency and weight of the evidence against him, the court's supplemental instruction to the jury upon their request for additional materials, and the adequacy of trial counsel's representation. We discern no error and affirm.

## I. BACKGROUND

At 10:50 p.m. on May 20, 2011, Shyara Watkins visited a liquor store at 12706 Jefferson Avenue in Detroit. As she returned to her car, a man approached her, pushed a gun against her back, and demanded her purse. Watkins turned to face the man and later testified that she had a good view of his face. She described him as African-American, approximately 5'6" or 5'7" and 160 pounds, with some facial hair, and wearing a black hoodie. After grabbing Watkins's purse, the gunman jumped into the rear door of a white van with a gray bottom border. Watkins observed a man sitting in the front passenger seat, who was also pointing a gun at her.

At trial, the prosecutor presented evidence that defendant was involved in another robbery approximately a half hour earlier and three miles away. Windi Cain visited a liquor store at 10060 Gratiot in Detroit. On her way back to her vehicle, a man jumped out of a white van with a black bumper, pointed a gun at her, and demanded her purse. Cain described the gunman as African-American, between 5'6" and 5'9" and weighing 170 to 200 pounds, with a medium complexion and facial scruff. Defendant was tried and convicted in a separate trial for Cain's robbery, and this Court affirmed. *People v Green*, unpublished per curiam opinion of the Court of Appeals, issued July 30, 2013 (Docket No. 310003).

-1-

## II. OTHER ACTS EVIDENCE

Defendant challenges the admission of evidence of Cain's robbery to support his identity as the perpetrator in Watkins's robbery. Defendant specifically contends that the women gave very different descriptions of their robbers, descriptions that are dissimilar to defendant's actual appearance. These differences rendered Cain's testimony inadmissible under MRE 404(b), defendant insists. We review for an abuse of discretion a trial court's decision to admit other-acts evidence, and review de novo underlying legal questions. *People v Kelly*, 317 Mich App 637, 643; 895 NW2d 230 (2016).

This Court recently provided a detailed explanation of the admissibility of evidence under MRE 404(b):

> While "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith [,]" "[i]t may . . . be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material. . . ." MRE 404(b)(1). There are three requirements for other-acts evidence to be admissible under MRE 404(b)(1): (1) the other-acts evidence must be offered for a proper purpose, i.e., for a purpose other than to show character and action in conformity therewith, (2) the other-acts evidence must be relevant to an issue of fact that is of consequence at trial, and (3) the danger of unfair prejudice must not substantially outweigh the probative value of the other-acts evidence. . . . MRE 404(b) is a rule of inclusion, not exclusion. . . . [*People v Pinkney*, 316 Mich App 450, 474-475; 891 NW2d 891 (2016).]

In *People v Ho*, 231 Mich App 178, 186; 585 NW2d 357 (1998), this Court found that "the four-part test of *People v Golochowicz*, 413 Mich 298, 309; 319 NW2d 518 (1982), remains valid to show logical relevance where similar-acts evidence is offered to show identification through modus operandi."

> The *Golochowicz* test requires that (1) there is substantial evidence that the defendant committed the similar act (2) there is some special quality of the act that tends to prove the defendant's identity (3) the evidence is material to the defendant's guilt, and (4) the probative value of the evidence sought to be introduced is not substantially outweighed by the danger of unfair prejudice. [*Ho*, 231 Mich App at 186.]

Here, the prosecution initially sought to introduce the other act to establish defendant's identity as the robber based on a common plan, scheme, or system used to perpetrate both robberies. The robberies occurred on the same night in nearby locations. Both occurred in liquor store parking lots. Both victims were petite women leaving the store and were carrying purses, the robber's quarry. The perpetrator in both offenses used a black handgun and employed similar language. In each instance, the robber was not alone and fled the scene in the back of a white van.

It is true that Watkins and Cain gave differing descriptions of their assailant and neither was spot on for defendant. Both women described the robber as shorter than defendant's actual height of 6'1". Cain more accurately described defendant's build. Cain described clothing later attributed to Jarrell Drain, who was arrested later that night while pumping gas into a white van. But both women stated that they had a clear view of the robber's face and selected defendant from a photographic lineup without hesitation.

And while all evidence is prejudicial to some degree, "only unfairly prejudicial evidence . . . should be excluded." *People v McGhee*, 268 Mich App 600, 613-614; 709 NW2d 595 (2005). "Unfair prejudice exists when there is a tendency that evidence with little probative value will be given too much weight by the jury" or the evidence would "inject[] considerations extraneous to the merits of the lawsuit," such as "the jury's bias, sympathy, anger, or shock." *Id*. at 614 (quotation marks and citation omitted). In determining whether other acts evidence is unfairly prejudicial, courts should consider various factors, including:

> (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. [*People v Watkins*, 491 Mich 450, 487-488; 818 NW2d 296 (2012).]

Evidence of Cain's robbery was not unfairly prejudicial to defendant. As noted, the two crimes were strikingly similar and occurred in close proximity in a short period of time. The evidence supporting defendant's participation in Cain's robbery was strong as evidenced by his jury conviction and this Court's affirmance. The prosecutor had great need of the evidence as Watkins was unable to give as clear a description of her robber. Moreover, Cain's description led to the arrest of defendant's accomplice, which in turn led to the discovery of defendant's identity. Evidence of Cain's robbery therefore provided necessary background information. Accordingly, the trial court acted within its discretion in admitting the evidence.

## III. SUFFICIENCY AND GREAT WEIGHT OF THE EVIDENCE

Defendant asserts that the prosecution presented insufficient evidence to support his convictions and that his convictions were against the great weight of the evidence. Defendant limits his complaint to the prosecution's identification evidence. We review de novo a challenge to the sufficiency of the evidence, viewing the evidence "in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt." *People v Williams*, 294 Mich App 461, 471; 811 NW2d 88 (2011).

To preserve a challenge based on the great weight of the evidence, however, a defendant must timely request a new trial. *Id*.; MCR 2.611(A)(1)(e). As defendant failed to do so, our review of that challenge is limited to plain error affecting defendant's substantial rights. *People v Cameron*, 291 Mich App 599, 617; 806 NW2d 371 (2011). In ascertaining whether a verdict is contrary to the great weight of the evidence, we consider "whether the evidence preponderates so

heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *Id.* (quotation marks and citation omitted).

"[I]dentity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). Direct evidence of identity is not required. "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime," *People v Carines*, 460 Mich 750, 758; 597 NW2d 130 (1999) (quotation marks and citation omitted), including identity. *People v Bass*, 317 Mich App 241, 264; 893 NW2d 140 (2016).

The prosecution presented sufficient evidence to support the jury's determination that defendant was the perpetrator in Watkins's robbery and his convictions are not against the great weight of the evidence. First and foremost, Watkins definitively identified defendant in a photographic array. This evidence, standing alone, sufficed to support defendant's convictions. *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000) ("[P]ositive identification by witnesses may be sufficient to support a conviction of a crime.").

Secondly, the other-acts evidence supports the verdict in this case. In challenging the great weight of the evidence, defendant emphasizes that Watkins and Cain described the perpetrator as being shorter and weighing less than defendant. Defendant also relies on differences in the witnesses' descriptions of the robber's clothing. Defendant notes that Green's clothing at the time of his arrest and Green's physical characteristics are more in line with the witness descriptions. Defendant also contends that the robberies occurred quickly and under less than optimal circumstances, calling into question the victims' ability to properly identify the perpetrator.

Despite any inconsistencies or contradictions in the evidence, we are not permitted to interfere with the jury's verdict in this case.

> Generally, a verdict is against the great weight of the evidence only when it was more likely the result of causes outside the record, such as passion, prejudice, sympathy, or some other extraneous influence. The general rule is that in most cases, conflicting testimony or a question as to the credibility of a witness is not sufficient grounds for granting a new trial. And, as a result of that rule, a trial court may not grant a new trial on the ground that it disbelieves the testimony of witnesses for the prevailing party. [*People v Morris*, 314 Mich App 399, 414; 886 NW2d 910 (2016) (quotation marks and citations omitted.]

There are scant exceptions to the rule that the jury's verdict is sacrosanct. We may only insert ourselves as "the 13th juror" where "exceptional circumstances" exist. *People v Bosca*, 310 Mich App 1, 13; 871 NW2d 307 (2015) (quotation marks and citations omitted).

> To support a new trial, the witness testimony must contradict[] indisputable physical facts or laws, be patently incredible or def[y] physical realities, be so inherently implausible that it could not be believed by a reasonable juror, or have been seriously impeached in a case that was marked by uncertainties and discrepancies. [*Id.* (quotation marks and citation omitted).]

The contradictions and inconsistencies do not rise to this level in this case. Both women were in well-lit parking lots and got a good look at the face of their robber. Each positively identified defendant in a photographic lineup. Although Cain and Watkins did not agree on the details of the robber's height and weight, they both indicated that he was tall and that they could only guess on this information. Based on the similarity of the robberies and Watkins's and Cain's separate and immediate identification of defendant as the perpetrator from different photographic arrays, defendant's convictions are not contrary to the great weight of the evidence.

## IV. SUPPLEMENTAL JURY INSTRUCTIONS

Approximately three hours into jury deliberations, the jurors sent a note to the trial court requesting (a) a transcript or recitation of defendant's entire testimony, (b) Cain's and Watkins's police statements, (c) the photographic arrays shown to Watkins and Cain, (d) exhibits pertaining to the physical description of the perpetrator and driver, (e) Cain's and Watkins's testimony describing the perpetrator and driver, (f) Watkins's testimony pertaining to her friend Marcus (who was parked in a pickup truck in front of the liquor store during the robbery), and (g) Watkins's and Cain's testimony regarding the live lineup including Green.

The court recalled the jury to the courtroom. It recounted the requested items and explained in turn why each item would not be produced. Specifically, the court stated:

Now, ladies and gentlemen, I received a long note, which reads as follows:

One, the entire testimony of the defendant.

You have to use your recollection, and your notes.

The entire testimony, please. This is not recorded. It's not typed out or anything.

The Court Reporter has to process all of this, and you know, that's why you're here, to use your minds and take notes.

We can't redo the wh[o]le trial, in other words. And I think that's what you're asking.

When you say, the entire testimony. You heard it.

One of the jurors interrupted, indicating that there were just "a couple . . . quick exchanges, that were really hard to keep track of what was said." The court asked the juror to narrow down the request and the juror gave a relatively detailed description of the subject testimony. The court indicated that the court reporter would try to find the specific exchange.

The court continued by advising the jury that Cain's and Watkins's police statements were not admitted into evidence and therefore could not be sent to the jury room. The jury then acknowledged that it had actually received the requested photo arrays.

In relation to testimony about the robber's physical description, the court advised:

-5-

You know, once again, you're supposed to rely on your memories, and notes.

Try to resolve it.

Try to resolve it.

If you can't, then please be specific, as much as you can, and you take notes.

And it's a collective recollection.

I mean, you're asking for something that's so broad.

The court repeated its exasperation over the request for Watkins's testimony about her friend Marcus and the witnesses' testimony about the live lineup:

See, what I'm getting out of this, you're asking me to have this trial done over again.

Why would you want all the testimony?

I mean, that's what you're supposed to do.

Watkins'[s] and Cain's testimony covering the live line up.

You've gotta use your own recollection, and your notes.

In the end, however, the court indicated:

I mean, if you can't resolve it, send me another note of what you want, other than just saying, we want the testimony.

Okay.

Return to the jury room and continue your deliberations.

The jury did not narrow down its requests and simply continued deliberating. The jury returned a guilty verdict one hour later.

Defendant contends that the court's instructions in this regard were improper and coercive. Defendant failed to preserve his challenge by raising a contemporaneous objection in the trial court. See *People v Galloway*, 307 Mich App 151, 157; 858 NW2d 520 (2014), rev in part on other grounds 498 Mich 902 (2015). Generally, we review de novo preserved claims of instructional error, *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007), and for an abuse of discretion the court's determination "that a jury instruction is applicable to the facts of the case." *Id*. Our review of unpreserved claims is limited, however, and we may "grant relief only when necessary to avoid manifest injustice." *Galloway*, 307 Mich App at 157 (quotation marks and citation omitted).

It is within the trial court's discretion whether to read testimony back for the jury and whether to limit the amount of material provided upon jury request. *People v Howe*, 392 Mich App 670, 675; 221 NW2d 350 (1974). We do not doubt that the trial court acted within its discretion in denying the overly broad requests of this jury. Rather, the question is whether the trial court's instructions were overly coercive. In this regard, we find instructive caselaw regarding supplemental instructions to deadlocked juries.

In *People v Sullivan*, 392 Mich 324; 220 NW2d 441 (1974), the Supreme Court adopted a standard jury instruction to be read to deadlocked juries to ensure that trial courts do not improperly coerce the jury into rushing to a judgment. The Supreme Court has advised trial courts not to deviate substantially from that standard instruction's language with statements including "pressure, threats, embarrassing assertions, or other wording that would cause this Court to feel that it constituted coercion." *People v Hardin*, 421 Mich 296, 315; 365 NW2d 101 (1984) (quotation marks and citations omitted). "Also relevant is whether the court required, or threatened to require, the jury to deliberate for an unreasonable length of time or for unreasonable intervals." *Id*. at 316. Another factor for consideration is the length of jury deliberations following the supplemental instruction. *People v Bookout*, 111 Mich App 399, 403; 314 NW2d 637 (1981).

Here, the court could have couched its admonitions more gently. However, the instructions were not coercive, pressuring, or threatening. The jury essentially requested that the entire trial testimony of several witnesses be read back to them. The court advised the jury to rely on their collective memories and their notes taken during the trial. If the jury still required assistance, the court advised them to narrowly tailor their requests to rehear parts of the testimony. This is consistent with MCR 2.513(N)(4), which provides:

> **Clarifying or Amplifying Final Instructions**. When it appears that a deliberating jury has reached an impasse, or is otherwise in need of assistance, the court may invite the jurors to list the issues that divide or confuse them in the event that the judge can be of assistance in clarifying or amplifying the final instructions.

The trial court's response was also consistent with MCR 2.513(P), which states:

> **Provide Testimony or Evidence**. If, after beginning deliberation, the jury requests a review of certain testimony or evidence that has not been allowed into the jury room under subrule (O), the court must exercise its discretion to ensure fairness and to refuse unreasonable requests, but it may not refuse a reasonable request. The court may make a video or audio recording of witness testimony, or prepare an immediate transcript of such testimony, and such tape or transcript, or other testimony or evidence, may be made available to the jury for its consideration. The court may order the jury to deliberate further without the requested review, as long as the possibility of having the testimony or evidence reviewed at a later time is not foreclosed.

The jury ultimately reached a verdict only one hour later. While a quick turn-around can be evidence of coercion, the lower court record does not demand this conclusion. It is equally

possible that after discussing their respective recollections of the testimony, the jury reached a verdict without resort to a rehearing of the testimony. We cannot conclude that the court's instructions so undermined the verdict as to require a new trial.

## V. ASSISTANCE OF COUNSEL

Defendant contends that his trial counsel was ineffective for: (a) failing to procure an expert to testify on eyewitness identifications and their inherent lack of reliability, and (b) failing to secure a more specific or detailed jury instruction consistent with *People v Anderson*, 389 Mich 155; 205 NW2d 461 (1973), overruled in part on other grounds *People v Hickman*, 470 Mich 602; 684 NW2d 267 (2004). Defendant also asserts that his trial counsel was ineffective for failing to object to the trial court's supplemental jury instructions.

" '[I]t has long been recognized that the right to counsel is the right to the effective assistance of counsel.' " *United States v Cronic*, 466 US 648, 654; 104 S Ct 2039; 80 L Ed 2d 657 (1984), quoting *McMann v Richardson*, 397 US 759, 777 n 14; 90 S Ct 1441; 25 L Ed 2d 763 (1970). In *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984), the United States Supreme Court held that a defendant's ineffective assistance claim includes two components: "First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." To establish the first component, a defendant must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *People v Solomonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004). With respect to the prejudice aspect, the defendant must demonstrate a reasonable probability that but for counsel's errors the result of the proceedings would have differed. *Id*. at 663-664. The defendant must overcome the strong presumptions that his "counsel's conduct falls within the wide range of professional assistance," and that his counsel's actions represented "sound trial strategy." *Strickland*, 466 US at 689 (quotation marks and citation omitted).

An attorney's decision to retain an expert witness, such as an expert on eyewitness identification, is typically a strategic matter. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). "In general, the failure to call a witness can constitute ineffective assistance of counsel only when it deprives the defendant of a substantial defense." *Id*. (quotation marks and citation omitted). "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Kelly*, 186 Mich App 524, 526; 465 NW2d 569 (1990).

At trial, defense counsel's strategy was to demonstrate that Cain and Watkins misidentified defendant as the perpetrator of the armed robberies. Counsel cross-examined Cain and Watkins to highlight the differences in their descriptions of the perpetrator, from each other and from the actual physical appearance and stature of defendant, as well as emphasizing the similarities between their descriptions and Green. "Although defendant believes that additionally presenting an expert on eyewitness testimony would have been helpful, and defendant may even be right, that counsel could conceivably have done more, or that a particular trial strategy failed, does not mean counsel's performance was deficient." *People v Blevins*, 314 Mich App 339 351; 886 NW2d 456 (2016). The failure to present an expert witness on the inherent unreliability of eyewitness identifications did not deprive defendant of a substantial defense. Defense counsel's reliance on cross-examination served the same purpose of any

potential expert testimony to impeach Cain and Watkins regarding their identifications of defendant. In addition, "[t]rial counsel may reasonably have been concerned that the jury would react negatively to perhaps lengthy expert testimony that it may have regarded as only stating the obvious: memories and perceptions are sometimes inaccurate." *People v Cooper*, 236 Mich App 643, 658; 601 NW2d 409 (1999). Significantly, "irrespective of whether eyewitness testimony is unreliable in general, it requires a highly tenuous leap of logic to extrapolate that *defendant's* identification *in particular* must be wrong." *Blevins*, 314 Mich App at 349 (emphasis in original).

Defendant also takes issue with his attorney's failure to request a special instruction regarding eye witness identifications consistent with *Anderson*, 389 Mich at 155. The trial court provided the standard jury instruction regarding issues of witness credibility and the factors to be evaluated when considering the dependability of an identification. The court admonished the jury to "carefully" examine a witness's testimony regarding identification and to "consider whether other evidence supports the identification[.]" Defendant fails to explain how the instructions provided by the trial court were inadequate or should have been supplemented.

In *Anderson*, our Supreme Court acknowledged concerns pertaining to the accuracy of eyewitness identifications and stated precautions that should be exercised in obtaining identifications, but did not mandate jury instructions any more expansive than the one given in this matter. *Anderson* does not require an instruction that eyewitness testimony is inherently unreliable. In fact, "*Anderson* does not require any special jury instruction regarding the manner in which a jury should treat eyewitness identification testimony." *Cooper*, 236 Mich App at 656. The court's instructions were more than adequate in addressing the concerns and uncertainties pertaining to eyewitness identification. Defense counsel was not ineffective for failing to seek an instruction beyond what was necessary and for which there is no recognized authority.

Defendant also contends that defense counsel was ineffective for failing to object to the court's supplemental instruction to the jury to continue deliberations while relying on their memories and notes, and without rehearing the testimonies of defendant, Cain, and Watkins. However, those instructions were not improper, leaving counsel no reason to object. Counsel cannot be deemed ineffective for "[f]ailing to advance a meritless argument or raise a futile objection." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

## VI. MCR 6.508(D)

Three years after his conviction and sentencing, defendant filed a motion for relief from judgment in the trial court, raising the same grounds as in this appeal. The trial court denied that motion pursuant to MCR 6.503(D)(3) as defendant failed "to establish good cause for his apparent failure to raise the aforementioned issues on appeal or in a prior motion." Moreover, the court determined that defendant had not established that he was actually innocent, thereby negating the good cause and prejudice requirements of the court rule.

We generally review for an abuse of discretion the trial court's denial of a defendant's motion for relief from judgment. *People v Ulman*, 244 Mich App 500, 508; 625 NW2d 429 (2001). In this case, however, defendant's challenge to the trial court's order was rendered moot when he filed a delayed application for leave to appeal and the Supreme Court remanded to this

-9-

Court with orders to consider his complaints. *People v Green*, 500 Mich 958; 891 NW2d 860 (2017). We have considered the grounds raised by defendant in his motion for relief from judgment in this appeal and found them lacking. Accordingly, defendant is not entitled to relief.

We affirm.

/s/ Thomas C. Cameron
/s/ Karen M. Fort Hood
/s/ Elizabeth L. Gleicher